Robert L. STRAUSS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22897.

United States Court of Appeals Fifth Circuit.

July 21, 1966.

Rehearing Denied Sept. 22, 1966.

Arthur B. Cunningham, Miami, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN and COLEMAN, Circuit Judges.

TUTTLE, Chief Judge.

This is the second attempt to re-try this case following an affirmance of the original judgment of conviction and sentence by this court, 311 F.2d 926 (5 Cir.,) and denial of certiorari by the United States Supreme Court, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412.

Strauss was convicted in the United States District Court for the Southern District of Florida for a violation of 18 U.S.C.A. § 371; Conspiracy to Conceal Assets in Contemplation of Bankruptcy. Briefly stated, the nature of the conspiracy charged, and which this court held was proved sufficiently to warrant submission to the jury, was that the appellant, together with Goodman and appellant's wife and one Jeri Bolton, would set up a corporation to acquire a leasehold interest in the Cadillac Hotel in Miami Beach, Florida, and that the corporation thus set up would borrow substantial sums of money, ostensibly for corporate purposes and would sell its stock and debentures, also ostensibly for corporate purposes, but with the true purpose, according to the indictment, of making available funds which would then be withdrawn by the appellant and Goodman, with the concurrence or assistance of the other conspirators, thus denuding the corporation of substantial assets in contemplation of the ultimate failure and bankruptcy of the company. The company was The Harold Corporation.

Upon the affirmance of the judgment of conviction, this court determined that there was substantial evidence to support a finding by the jury that substantial amounts of the funds of the corporation had been improperly withdrawn by appellant. In commenting on such sums, the court indicated that there were three certain checks that were made payable to Strauss and ostensibly endorsed by him. The government produced an expert handwriting witness who testified that in his opinion the endorsements were those of Strauss. In addition, a witness, Jack Lowe, testified that on one occasion he had cashed a check at the instance of Goodman, being a check for $15,000 or larger, and had given the proceeds to Strauss. Lowe also testified that on another occasion he had given the proceeds of a check to Strauss on his front porch in cash. In his testimony on the original trial, Lowe did not give even an approximate date when these occurrences took place, nor did he make it clear that the $15,000 was the proceeds of a single check in that amount, or for a larger sum.

The appellant did not take the witness stand personally on the original trial. He, therefore, did not dispute the testimony by Lowe that the latter had cashed a corporation check and delivered the proceeds to him in cash. Nor did the appellant testify that the signatures on the three mentioned checks were not his signatures. No witness was called on behalf of the defendant to challenge the opinion of the government's witness to the effect that Robert Strauss actually signed the endorsements on the mentioned checks.

After the affirmance of the conviction, a motion for new trial was filed, based on the theory of newly discovered evidence. The newly discovered evidence was the assertion by Strauss that he had discovered, after the trial, that his rela-

tions with The Harold Corporation, and Goodman and Jeri Bolton had entirely ceased in March, 1957, prior to some of the transactions testified to on the original trial. This motion for new trial was overruled by the trial court, and this court affirmed, stating that we were "unable to hold that the trial court erred in light of the strict requirements for the granting of such extraordinary motions," Strauss v. United States, (5 Cir.) 337 F.2d 853.

On December 1, 1964, appellant filed this second motion for new trial. This new motion was based on two grounds primarily. The first was that the three checks which have been mentioned above were not endorsed by Strauss but Strauss's signature had been written by someone else attempting to copy it. The second ground was that an analysis of the actual withdrawals by check of The Harold Corporation during a certain period in August, 1957, made it clear that Lowe's testimony of having given Strauss $15,000 as the proceeds of a check, was demonstrably false. The third ground was the attachment to the second motion for new trial of a purported release of Strauss executed by Goodman and Bolton on March 20, 1957.

Because of the fact that this court expressly mentioned three checks as having been introduced with the apparent signature of Robert Strauss having been used to negotiate them, we have carefully restudied the entire record on the original trial, and all of the evidence adduced, in order to determine whether, even assuming that impeaching evidence such as now presented must be considered by the trial court on a second motion for new trial on the ground of newly discovered evidence, such evidence would meet the requirement that if introduced on the first trial it would probably have caused a different result. See Ledet v. United States, (5 Cir.) 297 F.2d 737.

■ We concur with the views expressed by the trial court in the overruling of this present motion for new trial. The court pointed out that the issue as to the genuineness of Robert Strauss's signature on the three checks was presented on the first trial. The defendant has shown no reason why he would not be aware of the falsity of the signature on these checks, totalling some $50,000, if in fact they did not bear his signature. No reason is given for his failing to attempt to prove the falsity of these signatures if such was in fact the case. So too with respect to the challenge of the testimony of Jack Lowe. Even assuming that Lowe's testimony tendered in support of the present motion for new trial was contradictory of that given on the first trial, which would be hard to establish because of the lack of specific dates testified to by Lowe originally, no reason is assigned why the appellant would not know instantly upon hearing Lowe's original testimony that his statement that he had delivered $15,000 in cash to Strauss was not true, if, in fact, the story was not true.

As stated by the trial court if such showing as made here could be permitted to require a new trial, "no defendant would ever risk taking the stand or going forward with any evidence, for then, if he should be found guilty without any presentation, he could always have a 'new trial' with the omissions supplied."

■ Moreover, we think one other comment is appropriate in connection with the testimony given by appellant's expert by affidavit on this motion to the effect that the signatures on the three checks were not those of Strauss. Appellant's brief here is strident in terms of "forgery" and "perjury," the alleged forgery being based upon the opinion of the appellant's expert that Strauss's signature was not made by him, and the term perjury being ascribed to some differences in Jack Lowe's testimony on the motion as compared to that given by him on the trial. Appellant, by using these terms, seeks to equate the present record with that in Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1, in which case the Supreme Court noted that a concession by the Solicitor General that a government witness was dishonest, was sufficient to warrant the grant of a new

trial. What the appellant completely ignores here, or overlooks, is that there is no substantial evidence that Strauss's signature, even though not written by him, was a "forgery" in the legal sense. In light of the substantial evidence on the original trial of the transfer of funds in and out of the bank accounts of The Harold Corporation and account in the name of Jeri Bolton, which, according to the evidence, could be drawn against by either or both of the alleged conspirators, the fact that Strauss's name may have been signed by somebody else may well have been with his consent. This would be quite consistent with the fact that as late as March 20, 1957, several months after the three checks are alleged to have been negotiated on a "forged" endorsement in Strauss's name, the parties were still found dividing up the proceeds of a $330,000 loan from the Pan American Bank, and the parties were then signing some releases one against the other. The jury might have inferred that if these three checks had been endorsed by someone other than Strauss, then it was with his consent or had been ratified by him.

Also, it must be perfectly plain from the present record that no case of "perjury" could be made against Jack Lowe. His testimony, both on the original trial, and on the motion for new trial, is consistent in that he still swears that he made a payment of one sum of $15,000 in cash to Strauss out of certain checks given him by Goodman from The Harold Corporation. The fact that Lowe's recollection seven years after the event as to the exact source of this $15,000 is unclear and may be somewhat inconsistent with his recollection at the time of the trial several years earlier, does not make him guilty of perjury.

Finally, there is nothing in the claim of termination of the association between these parties that is in the nature of newly discovered evidence. This claim was made during counsel's opening statement to the jury. It was sought to be shown on the first motion for new trial. It does not warrant consideration now.

The judgment of the trial court is affirmed.