### In re UNITED STATES of America, Petitioner.
### No. 77–1267 Orig.

United States Court of Appeals,
First Circuit.

Argued Sept. 7, 1977.

Decided Nov. 8, 1977.

---

Charles E. Chase, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on petition for writ of mandamus and memorandum in support thereof for petitioner.

Nicholas B. Soutter, Wellesley, Mass., on memorandum in opposition for defendant, Clarence H. Wagner.

Before COFFIN, Chief Judge, TUTTLE,* Circuit Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

The United States seeks a writ of mandamus directing the district court to vacate an order granting a motion for new trial in a criminal case.

Clarence H. Wagner, the defendant below, was charged in a single indictment with fourteen counts of mail fraud, (18 U.S.C. § 1341), thirteen counts of securities fraud (15 U.S.C. §§ 78j(b), 78ff), and four counts of making false statements to the Securities and Exchange Commission (SEC) (18 U.S.C. § 1001). It was the government's contention that in soliciting money from the public for investments in bank certificates of deposit and title-insured first mortgages, defendant concealed the severe-

ly underfinanced condition of two multi-million dollar corporations he controlled.

A primary factual dispute at trial was over the question: who owned 100,000 shares of Texas International Petroleum Corporation (TIPCO) stock when defendant submitted to the SEC financial reports which included portions of the stock in the net capital of one of his corporations, C. H. Wagner & Co.[1] During the period in question, a complex series of financial transactions took place between defendant and a business associate, J. C. Trahan, which gave rise to the government's contention that Trahan held title to the stock.

According to Trahan, in December, 1970, he borrowed $114,280 from defendant and pledged as collateral 100,000 TIPCO shares. In June, 1971, at approximately the same time the SEC filed suit to enjoin C. H. Wagner & Co. from violation of its net capital rule, 15 U.S.C. § 80a–18, Trahan signed a memorandum indicating that defendant had purchased the stock. Trahan insisted, however, that he signed the memorandum purely as an accommodation to defendant, with whom he had close financial dealings, and that both parties understood title to the stock to remain with Trahan. In February, 1972, when Trahan learned that defendant had pledged 60,000 of the TIPCO shares as security on a $100,000 bank loan, Trahan repaid the bank, reacquired possession of a total of 70,000 TIPCO shares, 60,000 from the bank and 10,000 from defendant, and obtained from defendant a promissory note for the amount of the repaid bank loan.

Defendant agreed that he initially held the TIPCO shares as collateral, but asserted that in early 1971 he made an oral agreement with Trahan, sealed with a handshake, to buy 100,000 shares at $3.00 per share. Although defendant conceded that the purchase price was never paid, he pointed to the June, 1971, memorandum from Trahan to support his contention that he

* Of the Fifth Circuit, sitting by designation.

1. The last four counts of the indictment alleged that defendant listed varying amounts of TIPCO stock in four reports to the SEC: 100,000 shares in his June 23 and June 28, 1971 reports (Counts 28 and 29), and 70,000 shares in his January 19 and February 17, 1972 reports (Counts 30 and 31).

owned the stock outright when he listed it as net capital in the June, 1971, and January, 1972, reports to the SEC. Defendant also confirmed that he placed 60,000 shares as security for a $100,000 bank loan, but contended that when the bank sought repayment at accelerated rates he could not meet, he secured a new loan from Trahan which enabled him to pay the bank and reclaim the stock, which in turn he immediately surrendered to Trahan as collateral on the new loan. When defendant learned that other securities he held could not be included in his net capital, he exchanged these other shares for the TIPCO shares Trahan held, and thus properly included the TIPCO shares among his assets when he submitted a corporate financial report to the SEC in February, 1972.

Evidently the jury believed defendant's version of these various transactions, for a verdict of not guilty was returned on the four counts of the indictment that charged defendant with making false statements to the SEC. On each of the remaining 27 counts, however, defendant was convicted.

A month after verdict, defendant brought a motion for new trial alleging the existence of newly discovered evidence. Attached to the motion was a copy of a January 4, 1972 agreement, signed by defendant, which set forth the terms of a $100,000 loan by Trahan to C. H. Wagner & Co., to be secured by 70,000 shares of TIPCO stock. Included in the agreement was a warranty that C. H. Wagner & Co. owned the collateral free of encumbrances. At a hearing on the motion, defense counsel represented that the agreement first came to light after trial, on February 15, 1977, when defendant was the subject of a deposition in civil proceedings brought against Trahan by a Trustee appointed by the court pursuant to the Securities Investor Protection Act, 15 U.S.C. §§ 78o, 78aaa et seq. After affidavits were filed and a further hearing was held, the motion was granted. Contending that the district court was without power under Rule 33 of the Rules of Criminal Procedure to grant the motion, the government petitioned for relief under the All Writs Act, 28 U.S.C. § 1651.

We first address the merits of the claim of error, since it bears heavily on our analysis of our mandamus authority. The standards set by Rule 33 and the pertinent case law for granting a new trial motion on the ground asserted by defendant are that the evidence must be newly discovered, that it must be material to the issues, that it must be such as to have some effect on the outcome (the degree of such effect being as yet an issue of some disagreement among the circuits), and that the failure to obtain the evidence not be due to a lack of diligence on the part of the defendant. Wright, *Federal Practice and Procedure*, § 557. We measure the January 4, 1972 agreement and the circumstances of its discovery against these standards.

Under no view of the facts can we say that the document was "newly discovered". Defendant signed it four years before trial. We find it most difficult to assume that he did not have knowledge of that fact, particularly since the agreement involved so substantial a sum of money and pledged as collateral stock which formed a significant portion of his failing corporation's net capital. *See Longmire v. United States*, 404 F.2d 326, 328 (5th Cir. 1968); *Strauss v. United States*, 363 F.2d 366, 368 (5th Cir. 1966). Even without a presumption of knowledge, the existence of the agreement was again brought to defendant's attention in March, 1973, when he was deposed in connection with proceedings initiated by the SEC to liquidate C. H. Wagner & Co. Defendant was represented at the deposition by the same attorney who later appeared for him at the criminal trial, and was questioned at length about the substance of the agreement. An unsigned copy of it was entered as an exhibit and was forwarded to defendant's attorney. Both defendant and his counsel were thus apprised of the fact that the document existed well before trial. Were the belated recalling of facts that were once well known and since forgotten to qualify as "newly discovered", the teeth of the rule would be substantially blunted.

Even if we could conclude that this was newly discovered evidence, to form

the basis for a new trial, it must be shown to be material to the issues before the jury.[2] Case law holds that evidence which merely corroborates or impeaches is not material for the purposes of a Rule 33 motion. *United States v. Coleman*, 460 F.2d 1038, 1040 (8th Cir. 1972); *Corey v. United States*, 346 F.2d 65, 67 (1st Cir. 1965). The 1972 agreement added nothing to what had already been testified at trial. Defendant asserted he owned the stock; Trahan flatly contradicted him. As the district court noted, the agreement might have bolstered defendant's credibility and undermined Trahan's, but we have made it clear that such cumulative evidence is insufficient to order a new trial. *Corey v. United States, supra; see also United States v. Mello*, 469 F.2d 356, 358 (1st Cir. 1972).

Similarly, defendant failed to establish that the outcome of the trial would likely have been different had the jury been presented with the January 4, 1972 agreement.[3] Although it could well be argued that the agreement shed light on the government's assertion that defendant improperly included the TIPCO stock among his net assets in reports to the SEC, defendant was acquitted of those counts of the indictment. With regard to the securities and mail fraud charges, however, even if the document could be said to establish conclusively that defendant maintained title to the stock, C. H. Wagner & Co. would still have been undercapitalized by hundreds of thousands of dollars, unable to meet its obligations to investors, and thus in violation of federal statutes when it continued to solicit public investments. 18 U.S.C. § 1341, 15 U.S.C. §§ 78j(b), 78ff.

Finally, a new trial should not have been granted because it appears that due diligence would have produced the document before or during the first proceeding. *See United States v. Mello, supra*, 469 F.2d at 358. At the hearings on the motion for new trial it was conceded that Trahan's trial testimony jogged defendant's memory that the 1972 agreement had been reduced to writing, and that he promptly told his attorney so. Yet counsel did not request a continuance to search for the document, or cross-examine Trahan about its existence, or question defendant about it during the defense case. A tactical decision was made not to pursue the issue; defendant cannot later complain that it backfired. *See Dirring v. United States*, 353 F.2d 519, 520 (1st Cir. 1965).

■ We have no hesitation in concluding that a motion for new trial should not have been granted. More difficult, however, is the question of whether this obvious error can be corrected by way of mandamus.

■ Two grounds have traditionally been offered for use of the writ. The first, "in aid of appellate jurisdiction", *In re Ellsberg*, 446 F.2d 954, 955 (1st Cir. 1971), is inapposite here, since under 18 U.S.C. § 3731 a government appeal from an order

---

**2.** Prosecutorial negligence in failing to make evidence available to a defendant at trial may reduce the need for a showing of materiality on a motion for new trial. *United States v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969). Defendant argues that, worse than being negligent, the government wilfully withheld this evidence, which had been in its possession since before the February 15, 1977 deposition in the civil proceedings against Trahan. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant, who, after all, signed the document, is in a poor position to argue that the government was derelict in its duty because one arm, the SEC, came into possession of it at some point in proceedings against Trahan, and its prosecutorial arm was unaware of it in this criminal proceeding against defendant. *See United States v. Fabric Garment Co.*, 262 F.2d 631, 642 (2d Cir. 1958).

In any event, we agree with the district court that there was no bad faith and even though the government may arguably be thought to be somewhat negligent, the need to show materiality is not eliminated.

**3.** There is some uncertainty whether the standard to be applied against Rule 33 motions is the majority rule, that the evidence "would probably produce acquittal", *Johnson v. United States*, 32 F.2d 127, 130 (8th Cir. 1929), or a minority position, that it "might" have caused the jury to reach a different result, *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928). *See United States v. Strauss*, 443 F.2d 986, 989 (1st Cir. 1971). We need not resolve that question, since the evidence here fails under either standard.

granting a new trial will not lie. *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977). The alternative basis, exercise of our supervisory power over district courts, has strictly limited application. It is confined to challenges to the authority of the district court to act. *In re Arvedon*, 523 F.2d 914, 916 (1st Cir. 1975); *In re Ellsberg, supra*, 446 F.2d at 956. Simply because an order was erroneous does not mean the district court lacked the power to enter it. *Will v. United States*, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). "Only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Id.* at 95, 88 S.Ct. at 273. *See also In re Melvin*, 546 F.2d 1, 2 (1st Cir. 1976); *In re United States*, 348 F.2d 624, 626 (1st Cir. 1965).

The Supreme Court's decision in *United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610, *rehearing denied*, 332 U.S. 784, 68 S.Ct. 28, 92 L.Ed. 368 (1947), gives some guidance in the application of this standard. There the defendant filed a timely motion for new trial attacking his conviction on a number of grounds, none of which was the existence of newly discovered evidence. The motion was denied. In an appeal that challenged, among other issues, the denial of the Rule 33 motion, the conviction was affirmed. After mandate had issued, and although no motion was pending, the district court *sua sponte* ordered a new trial. The government sought mandamus.

On appeal the Supreme Court ruled that a new trial could not have been granted because no new evidence was alleged and the five day period set by Rule 33 for motions on any other grounds had long since passed. Since the defendant would not have been entitled to a new trial had he requested it, the court reasoned that the district court was without power to order it of its own motion. Mandamus issued. *Smith* is distinguishable from this case in

that here a Rule 33 motion was pending and the allegation of new evidence enabled the district court to entertain it after the five day period. But alleging evidence which so clearly fails to meet any of the standards governing the granting of a new trial is in substance little different from alleging no evidence at all.

We are aware that several factors found to impel the use of mandamus in other cases are absent here. We have no reason to believe that the error below is frequently repeated, *Bauman v. United States District Court*, 557 F.2d 650, 660 (9th Cir. 1977), and we recognize that standards for granting a new trial on the basis of newly discovered evidence are well established. *See United States v. Mello, supra*, 469 F.2d at 358; *United States v. Strauss, supra*, 443 F.2d at 989.

■ On the other hand, the government's claim that the district court acted in error is "clear and indisputable", *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Absent mandamus it would never be presented for our review.[4] As we have noted, the government cannot now appeal this order under 18 U.S.C. § 3731, nor could it in the event of a retrial in which defendant was acquitted. Should defendant be retried and convicted, defendant could appeal, but he would not be expected to challenge the power of the district court to grant a ruling favorable to him, and the government could not do so. Without mandamus, the legitimate interests of the government in having a valid jury verdict stand would be completely frustrated and the considerable expense of unwarranted retrial of this long and complicated case could never be vindicated. *United States v. DiRusso*, 548 F.2d 372, 374 (1st Cir. 1976).

Moreover, traditional restraints on granting government requests for mandamus in criminal cases have no bearing here. *See*

4. Although the absence of a right of appeal is grounds for refusing to invoke mandamus "in aid of appellate jurisdiction", that fact militates in favor of exercising supervisory mandamus.

*Bauman v. United States District Court*, 557 F.2d 650, 656 (9th Cir. 1977); *In re Arvedon*, 523 F.2d 914, 916 (1st Cir. 1975).

*Will v. United States, supra,* 389 U.S. at 96, 88 S.Ct. 269. Defendant waived claims that his constitutional right to a speedy trial and protection against double jeopardy would be violated by a retrial when he moved for Rule 33 relief. Similarly, we are not inhibited by the policy rationale against mandamus, the prevention of piecemeal appellate review. *Id.* This trial came to verdict before mandamus was sought.

We have one other concern. While, to our knowledge, clear error in the granting of new trials on the basis of newly discovered evidence has not been a significant problem in this circuit, we do not think we need wait for a series of unsuccessful requests for mandamus before we act. We have no intention to dampen the courage of trial courts in deciding, in the face of significant new evidence and after rigorous deliberation, to grant new trials, but we think it timely to reemphasize the demanding standards which must be met.

 Our holding that mandamus is warranted in this case is not a general invitation to the government to invoke an extraordinary remedy to cure common ills. This case represents no departure from our previous statements that only the rarest of circumstances merit intervention by mandamus, *see In re Ellsberg, supra,* 446 F.2d at 956. The action of the trial judge was not merely an error of judgment within the wide range of discretion authorized by Rule 33, nor a weighing of evidence with which we disagree. Under no interpretation of the evidence presented here could any of the standards for granting a new trial be said to have been met. Under the circumstances we have set forth, we think the writ is justified.

*The writ of mandamus shall issue and the district court shall vacate its order granting a new trial.*