## In re UNITED STATES of America, Petitioner.

### No. 78–2319.

United States Court of Appeals, District of Columbia Circuit.

March 14, 1979.

---

Earl J. Silbert, U. S. Atty., Henry F. Schuelke, III, Richard L. Beizer, and Michael Lehr, Asst. U. S. Attys., Washington, D. C., were on the pleadings, for petitioner.

• Edward Bennett Williams, Washington, D. C., was on the pleading, for respondent, Dominic F. Antonelli, Jr.

John A. Shorter, Jr., Washington, D. C., was on the pleading, for respondent, Joseph P. Yeldell.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

Lacking any right to appeal the grant by the District Court of a motion for a new trial in a criminal case, the Government seeks a writ of mandamus directing the District Court to vacate its order granting a new trial and to reinstate the verdicts of guilty returned by a jury. For the reasons hereinafter appearing, we deny the petition.

### I.

On October 24, 1978, after a three and a half week trial before a sequestered jury, defendants Antonelli and Yeldell were convicted of conspiracy to defraud the District of Columbia, and bribery. On October 26, 1978, Antonelli, joined by Yeldell, filed an application seeking an extension to November 14, 1978 of the seven-day time limit, under Rule 33 of the Federal Rules of Criminal Procedure, within which to file a motion for a new trial.[1] This application was granted the following day by the trial judge.

---

1. Fed.R.Crim.P. 33 provides as follows:

The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

On November 14, 1978, Antonelli filed his motion for new trial (which was adopted by Yeldell), the first ground of which was:

A juror deliberately concealed on voir dire information directly relevant to her bias against defendant Antonelli.

In his supporting memorandum, Antonelli set forth the facts underlying the stated ground. Juror Number One, Ms. Diane P. Jones, had failed to answer the following *voir dire* questions on October 2, 1978 prior to the selection of the jury:

Have any of you ever been employed, or immediate members of your family employed, by an automobile parking lot business, such as PMI?

Have any of you had any unpleasant dealings with a local parking lot . . . ? In other words, do any of you consider you have been treated unfairly by anybody running a parking lot business . . . ?

Antonelli is a major stockholder and chairman of the board of directors of PMI, a parking lot company in the District of Columbia.

Antonelli alleged by affidavit that the father of Ms. Jones was presently employed as a parking lot attendant for Diplomat Parking Corp. (a corporation not affiliated with PMI), and had worked ten years earlier for PMI as a parking lot attendant and been fired. It was further alleged that the daughter knew these facts. Counsel for Antonelli submitted an affidavit stating that he, counsel, would have strenuously opposed, to the point of peremptory challenge, Ms. Jones' serving on the jury had he known that her father had worked for and been fired by PMI.[2]

The trial court held an evidentiary hearing on defendants' new trial motion on November 22, 1978, at which there was testimony that, at the time of the *voir dire*, the juror was aware that her father was then employed at Diplomat Parking Corp., but had no recollection that he had once been employed or fired by PMI.

On November 24, 1978, defense counsel learned, apparently for the first time, of some additional information about Ms. Jones. She had had a checking account at the Madison National Bank (a bank which had figured centrally in the trial) between 1975 and 1976, and had failed to respond to the *voir dire* question, "Have any of you had any dealings with the Madison National Bank?" Defense counsel promptly brought this new information to the attention of the trial court and opposing counsel.

On November 27, 1978, counsel for Antonelli formally moved to supplement the record of the new trial motion with the newly discovered information about Ms. Jones' account at the Madison National Bank. Later that same day the trial court granted Antonelli's motion to supplement the record; and thereafter announced its ruling on the new trial motion orally from the bench. The trial court first found that the juror had not been biased against either of the defendants, and that she had not known that her father had been fired by PMI. The court did find that she had intentionally failed to reveal that her father worked at Diplomat Parking Corp. and that she had had an account at Madison National Bank; and it characterized each of these non-disclosures as material. On the basis of these non-disclosures the court granted a new trial, stating in conclusion:

If there is an intentional non-disclosure, as there is here, the Court has an obligation under the cases cited by both sides, to grant a new trial.

I hereby grant a new trial. I grant the motion to set aside the verdict in this particular case. I do so because I think it is in the interests of justice. I have also

---

2. During jury selection, the defense exercised only 12 of its 16 peremptory challenges. Had Juror No. One answered the question about her father's current parking lot employment, it seems evident that her answer would have been followed up at the insistence of the defense, including the bringing to bear of the full force of the defense's independent investigatory resources upon his entire career as a parking lot employee. The contention made by the defense that she almost certainly would not have been permitted to serve as a juror is hardly far-fetched.

a discretion here to act; and I am acting under that discretion to preserve the integrity of the jury system in this courtroom.

The Government's petition for writ of mandamus followed.

## II.

■ We are of the view that, given the timely new trial motion based upon the parking lot information, there can be no serious contention that the District Court was without *jurisdiction* to entertain and to act upon it. *United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), upon which the Government relies heavily, provides an instructive contrast. There a District Court denied a timely motion for a new trial and entered a judgment of conviction, which was affirmed on appeal. After the defendant began serving his sentence, the District Court reconsidered the grounds previously urged in support of the motion and *sua sponte* granted a new trial. The Government sought mandamus, which was denied by the Court of Appeals, but the Supreme Court reversed, holding that a timely motion pursuant to Rule 33 was a prerequisite to the District Court's power to award a new trial.

In the case before us, the parking lot issue was timely raised by a motion for a new trial made within the seven-day period as extended. The proceedings with regard to that motion were regular in nature, and are not claimed to be otherwise by petitioner, whose strictures go only to its result. There was also sufficient logical connection between the ground raised by the defendants in their papers seeking a new trial and the result reached by the District Court to satisfy any doubt that jurisdiction existed.[3] When timely presented with the parking lot

issue, the District Court was empowered, if it were so advised, to grant a new trial "in the interest of justice."[4] The court was so inclined, and it is immaterial that it also considered and relied on Ms. Jones' failure to reveal that she once had an account at Madison National Bank. The court stated emphatically that it would grant a new trial "[i]f there is an intentional non-disclosure, as there is here. . . ." The court's explicit assessment of the non-disclosure of the parking lot information as material and intentional or reckless makes clear that no more than that single breach of the integrity of the *voir dire* process was needed to persuade it to order a new trial.

■ Petitioner contends that the District Court was grievously in error in its appraisal, from the record before it, of the impact upon the essential fairness of the trial of Ms. Jones' failure to answer. This argument is beside the point, for this is a petition for mandamus. As the Supreme Court put beyond doubt in *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), it is not the office of mandamus to correct erroneous interlocutory orders that are within a trial court's jurisdiction:

> The peremptory writ of mandamus has traditionally been used in the federal courts only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26, [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943). While the courts have never confined themselves to an arbitrary and technical definition of "jurisdiction," it is clear that only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this

---

**3.** Cf. *American Airlines v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953). *See* note 6 *infra*. We have considered the parking lot information independently of the checking account information.

**4.** It is the rule in this Circuit that if a motion for new trial is filed within the 7-day, as extended, period, the ground raised, whether "newly discovered evidence" or "any other ground," is judged by the less stringent "inter-

est of justice" standard, rather than any more demanding standard which may be applicable to grounds raised outside that time frame. *United States v. Pinkney*, 177 U.S.App.D.C. 423, 431 n. 56, 543 F.2d 908, 916 n. 56 (1976); *United States v. Anderson*, 165 U.S.App.D.C. 390, 405, 509 F.2d 312, 327 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), and cases cited therein.

extraordinary remedy. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, [65 S.Ct. 1130, 1132, 89 L.Ed. 1566] (1945).

*Id.* at 95, 88 S.Ct. at 273.

The Court has long drawn a distinction between "jurisdiction" and "power," on the one hand, and "error," however substantial, on the other. The *Will* opinion is highly instructive on this score:

> Nor do we understand the Government to argue that a judge has no "power" to enter an erroneous order. Acceptance of this semantic fallacy would undermine the settled limitations upon the power of an appellate court to review interlocutory orders. Neither "jurisdiction" nor "power" can be said to "run the gauntlet of reversible errors." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382, [74 S.Ct. 145, 98 L.Ed. 106] (1953). Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as "abuse of discretion" and "want of power" into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. "Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 223, 225, [65 S.Ct. 1130, 1136, 89 L.Ed. 1566] (1945) (dissenting opinion of Mr. Justice DOUGLAS).

*Id.* at 98 n. 6, 88 S.Ct. at 275 n. 6. *See also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504, 511 (1978).

■ The judgment of the trial court is not to be disturbed if there is any theory on which it can be rested.[5] We find that, certainly with respect to the parking lot issue,[6] the District Court acted within the bounds of its authorized jurisdiction in granting the new trial, and we accordingly deny mandamus.[7]

### III.

■ We recognize that in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Supreme Court approved the use of mandamus to correct a pattern of erroneous referrals of cases to special masters because "supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system." *Id.* at 259–260, 77 S.Ct. at 315. And in *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the Court sanctioned use of mandamus as a method of resolving an important legal question of first impression under Federal Rule of Civil Procedure 35. Today we need not and do not decide whether the doctrines of "supervisory" and "advisory" mandamus apply in criminal cases, where the policy against

**5.** On direct appeal "[t]he prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970). If this is true on direct appeal, it is *a fortiori* true in a mandamus proceeding.

**6.** We differentiate this issue from that of the Madison Bank account for the reason that there is no claim by petitioner of any procedural irregularity in the handling of the former. In the case of the Madison Bank question, contrarily, petitioner asserts that the motion to supplement the record should not have been granted because (1) it was in effect an untimely motion for new trial under the "interest of justice" standard of Rule 33, and (2) if claimed to be timely as a motion based on "newly discovered evidence," it should have failed because there was no showing that it could not have been discovered earlier in the exercise of due diligence.

In our disposition of this petition, we do not reach the question whether a single ground stated in a motion for new trial filed within the 7-day period may be supported, while the motion is *sub judice*, by evidence discovered after expiration of the 7-day period, without meeting the more stringent standards for "newly discovered" evidence proffered outside the 7-day but within the 2-year period. *Cf. United States v. Hamilton*, 457 F.2d 95 (3d Cir. 1972).

**7.** The petition is not premised on any contention that the respondent District Judge abused his discretion. *See* Petition for Writ of Mandamus, at 35. *See generally, Colonial Times, Inc. v. Gasch*, 166 U.S.App.D.C. 184, 190, 509 F.2d 517, 523 (1975).

**238**

piecemeal appeals, particularly by the Government, reaches its zenith. *See Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); *Will v. United States*, 389 U.S. 90, 96–97, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *United States v. Griesa*, 481 F.2d 276, 278 (2d Cir. 1973). Nor need we enter the controversy as to whether these doctrines have survived *Will*,[8] for they are inapplicable here. Petitioner is simply disputing the District Court's evaluation of what the "interest[s] of justice" require in this case. It would be singularly inappropriate to review this fact-specific discretionary determination by way of mandamus.

Petitioner makes much of the decision of the First Circuit in *In re United States*, 565 F.2d 173 (1st Cir. 1977), where the court analogized the grant of a new trial on the basis of an allegation of "evidence which so clearly fails to meet any of the standards governing the granting of a new trial," *id.* at 178, to the *sua sponte* award of a new trial held correctable by mandamus in *United States v. Smith, supra.* Without inquiring whether that case was rightly decided, we note that the basis for the timely motion and award of a new trial here cannot be characterized in such a manner.[9] Moreover, "it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976).

If petitioner believes that the consequences of the District Court's ruling in this case demonstrate that there is a strong public interest to be served by enlarging its rights of appeal under 18 U.S.C. § 3731, as they were a few years ago with respect to the pretrial suppression of evidence,[10] it should seek amendment of that statute by Congress.

The petition for mandamus, seeking as it does to make that extraordinary writ do the office of a direct appeal which Congress has thus far failed to provide, is denied.

*It is so ordered.*

---

8. *See, e. g.*, 9 J. Moore, Federal Practice, ¶ 110.-28, at 308–313 (2d ed. 1948); C. Wright, Federal Courts, § 102, at 517 (3d ed. 1976); Redish, *The Pragmatic Approach to Appealability in the Federal Courts*, 75 Colum.L.Rev. 89, 115 (1975). *See also Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 353, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).

9. *See, e. g., Ryan v. United States*, 89 U.S.App. D.C. 328, 331, 191 F.2d 779, 782 (1951); *Car-*

*penter v. United States*, 69 U.S.App.D.C. 306, 307, 100 F.2d 716, 717 (1938); *cf. Jackson v. United States*, 129 U.S.App.D.C. 392, 395 F.2d 615 (1968).

10. June 19, 1968, Pub.L. 90–351, Title VIII, § 1301, 82 Stat. 237, *as amended* January 2, 1971, Pub.L. 91–644, Title III, § 14(a), 84 Stat. 1890.