UNITED STATES of America,
Plaintiff-Appellant,

v.

Maria Ann DIOR, Defendant-Appellee.

UNITED STATES of America,
Petitioner,

v.

UNITED STATES DISTRICT COURT
FOR the WESTERN DISTRICT OF
WASHINGTON, Respondent.

No. 80–1497.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided March 15, 1982.

Rehearing Denied June 1, 1982.

Christine McKenna Moore, Seattle, Wash., argued, for plaintiff-appellant; John C. Merkel, U. S. Atty., Seattle, Wash., on brief.

Irwin Schwartz, Federal Public Defender, Seattle, Wash., for defendant-appellee.

Before PREGERSON and POOLE, Circuit Judges, and KARLTON,* District Judge.

PREGERSON, Circuit Judge:

The principal question this criminal case requires us to decide is whether an order granting a new trial, after a jury's verdict of guilty, is appealable before retrial.

On May 2, 1978, a federal grand jury returned a three count indictment against appellee, Maria Ann Dior. Count 1 charged her with knowingly smuggling four fur coats into the United States in violation of 18 U.S.C. § 545.[1] Count 2 charged her with wilfully attempting to introduce imported merchandise by means of false statements in violation of 18 U.S.C. § 542.[2] Count 3 charged her with knowingly transporting stolen merchandise with a value of $5,000 or more in interstate commerce in violation of 18 U.S.C. § 2314.[3]

The jury acquitted Dior on count 2, but found her guilty on counts 1 and 3. She filed a post-trial motion for judgment of acquittal under Fed.R.Crim.P. 29(c) or for a new trial under Fed.R.Crim.P. 33. The district court granted a new trial on count 1 and entered a judgment of acquittal on count 3. The Government appeals both rulings and alternatively challenges the new trial order by writ of mandamus.

*Count 1: Appealability of the New Trial Order*

■ The district court determined that an incorrect instruction, submitted by the Government, had been read to the jury, and that because much of the evidence against Dior was circumstantial, the error could not

---

* Lawrence K. Karlton, United States District Judge for the Eastern District of California, sitting by designation.

1. 18 U.S.C. § 545 reads in part:

    Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other documents or paper; or

    Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

    Shall be fined not more than $10,000, or imprisoned not more than five years, or both.

    Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

2. 18 U.S.C. § 542 reads in part:

    Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reason-

able cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

    Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

    Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

3. 18 U.S.C. § 2314 reads in part:

    Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more . . .

    . . . .

    Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

be characterized as harmless. Accordingly, the court granted appellee's motion for a new trial on count 1. Because we hold that a new trial order in a criminal case is not appealable before retrial, we need not determine whether the instruction in question was correct.

■ The right to appeal and appellate jurisdiction are both creatures of statute. To prosecute its appeal before this court, appellant must show that it has the right to appeal and that the order appealed from comes within the terms of a statutory grant of appellate jurisdiction. *See generally Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). 28 U.S.C. § 1291 grants the courts of appeals jurisdiction to review all "final decisions of the district courts." [4] It is settled in this circuit that new trial orders in civil cases are not appealable until after retrial because such orders are interlocutory rather than final. *DePinto v. Provident Security Life Insurance Co.*, 323 F.2d 826 (9th Cir. 1963); *Gilliland v. Lyons*, 278 F.2d 56 (9th Cir. 1960); *United States v. Hayes*, 172 F.2d 677 (9th Cir. 1949); *Long v. Davis*, 169 F.2d 982 (9th Cir. 1948). We have yet to decide whether new trial orders in criminal cases are appealable before retrial.[5] We conclude that they are not.

The consistent policy of the federal judiciary has been to avoid interlocutory or piecemeal appellate review. *See, e.g., United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). This policy has particular force in criminal cases, where delay often would impair the proper functioning of our criminal justice system. Thus, the Supreme Court has reiterated the traditional requirement of a final judgment as a predicate to federal appellate jurisdiction. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *see also United States v. Griffin*, 617 F.2d 1342 (9th Cir. 1980). "In general, a 'judgment' or 'decision' is final for the purpose of appeal only 'when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined.'" *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956), quoting *St. Louis, Iron Mountain & Southern R. Co. v. Southern Express Co.*, 108 U.S. 24, 28, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883); *United States v. Carnes*, 618 F.2d 68 (9th Cir. 1980).[6] This rule applies in criminal as well as civil cases. *Parr v. United States*, 351 U.S. at 518, 76 S.Ct. at 916. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937), quoted in *Parr v. United States*, 351 U.S. at 518, 76 S.Ct. at 916.

A district court's order granting a new trial in a criminal case is not a final decision; it does not resolve the ultimate question of the guilt or innocence of the accused of the crime charged in the indictment, much less determine a sentence. Thus authority to appeal under 28 U.S.C. § 1291 is lacking. The Government argues, however, that statutory authority to appeal can be found under the Criminal Appeals Act, 18 U.S.C. § 3731.[7]

---

**4.** Section 1291 provides:

The courts of appeals shall have jurisdiction of appeals of all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

**5.** The Fifth, First, and Second Circuits have decided that the Government may not appeal before retrial an order granting a new trial in a criminal case. *United States v. Hitchmon*, 602

F.2d 689 (5th Cir. 1979); *In re United States*, 565 F.2d 173 (1st Cir. 1977); *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977).

**6.** The Government does not argue that a district court's order granting a new trial falls within the so-called "collateral order" exception to the final judgment rule first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**7.** 18 U.S.C. § 3731 provides:

18 U.S.C. § 3731 was originally enacted in the context of federal policy, deeply rooted in the common law, that the sovereign has no right to appeal an adverse criminal decision unless expressly authorized by statute to do so. *See Arizona v. Manypenny,* 451 U.S. 232, 246, 101 S.Ct. 1657, 1666, 68 L.Ed.2d 58 (1981). This policy had been so strictly applied that the appellate jurisdiction apparently conferred by section 1291 was insufficient, standing alone, to authorize a government appeal from a final decision. *DiBella v. United States,* 369 U.S. 121, 130, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962). The original version of section 3731, passed in 1907, narrowly circumscribed the Government's right to appeal, but the 1970 amendments to section 3731 significantly expanded its scope. In fact, the Supreme Court has stated that by amending section 3731, "Congress intended to remove all statutory barriers to government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975). Based on this language in *Wilson* and the legislative history of the Criminal Appeals Act, the Government argues that section 3731 was intended to authorize government appeals from an order granting a new trial in a criminal prosecution.

■ We do not agree. Justice Stevens recently pointed out: "There is a distinction between a court's power to accept an appeal

> In a criminal case, an appeal by the United States shall lie to a court of appeals from a decision, judgment or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
>
> An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

and an executive's power to prosecute an appeal." *Arizona v. Manypenny,* 451 U.S. 232, 247, 101 S.Ct. 1657, 1669, 68 L.Ed.2d 58 (1981) (Stevens, J., concurring). Thus there are two jurisdictional questions presented by any appeal prosecuted by the Government: (1) whether the Government is permitted by statute to take the appeal, and (2) whether the challenged order, decision, or judgment itself is appealable. Section 3731 as construed allows the Government to take an appeal when permitted by the Constitution. Section 3731, however, does not purport to eliminate section 1291's limitations on a court's power to accept an appeal. The legislative history of section 3731 does not reveal, and we cannot presume, that Congress intended to abolish the final judgment rule of section 1291 for criminal appeals prosecuted by the Government. To accept the Government's position would result in an unwarranted extension of section 3731. Although this court fully embraces the congressional mandate that section 3731 be liberally construed, *see United States v. Hetrick,* 644 F.2d 752 (9th Cir. 1981); *United States v. Marubeni America Corp.,* 611 F.2d 763 (9th Cir. 1980), we cannot overlook the fact that section 3731 does not enlarge our power to accept an appeal under section 1291. In liberally construing section 3731, we recognize the Government's right to appeal only those orders that are final decisions under section 1291.[8]

> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
>
> Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title.
>
> The provisions of this section shall be liberally construed to effectuate its purposes.

8. The cases cited by the Government to support its position that Congress intended to remove all barriers to government appeals in criminal cases are inapposite. Those cases construed the Government's right to appeal orders that satisfied the final judgment rule of section 1291. *See United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (dismissal of an indictment for pre-indictment delay); *United States v. Martin Linen Supply,*

Apart from legislative history and the language of *Wilson*, the Government argues that there is evidence other than legislative history and the language of *Wilson* that Congress intended to encroach upon the final judgment rule when it amended section 3731. Pointing out that section 3731, as amended in 1970, permits an appeal from suppression orders, which are not final decisions under section 1291, the Government concludes that an order granting a new trial is similarly appealable.

The analogy is inapt. Section 3731 permits a government appeal from a suppression order only in limited circumstances. The United States Attorney must certify that the appeal is not taken for purposes of delay and that the evidence is substantial proof of a fact material to the proceedings. These restrictions demonstrate that Congress recognized the importance of minimizing appellate interference in the trial process—a factor supporting the nonappealability of the new trial order here. In light of this congressional concern, we should not extend Congress's limited waiver of the final judgment rule for suppression orders to new trial orders.

Moreover, the statutory history of the 1970 amendments to section 3731 indicates that the overriding purpose of the provision permitting immediate government appeals from suppression orders was to deal with the harm which the lack of government appeals worked on the development of the law of suppression. This harm included inconsistent rulings at the trial court level and the development of the law of suppression without the full benefit of appellate review. *See generally United States v. Greely*, 413 F.2d 1103, 1104 (D.C. Cir. 1969).

None of these purposes is served by permitting an appeal of the new trial order in question here. Furthermore, there are important policy reasons that militate against appealability of new trial orders before retrial. The appellate review sought by the government is likely to interfere with the proper and efficient functioning of the district court. Appellate intervention in the trial process denies the district court the opportunity to apply its expertise and correct its own mistakes. Such intervention also leads to piecemeal review which at the least (1) is inefficient, and upon completion of the retrial might prove to be unnecessary, and (2) undermines the independence of the district judge, and the special role the district judge plays in our judicial system as the individual initially called upon to decide many difficult questions of law and fact occurring in the course of a trial. Finally judicial review at this point would delay resolution of the ultimate question of the guilt or innocence of the accused of the crime charged in the indictment. *Cf. Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (order denying disqualification of counsel not appealable under section 1291 or collateral order doctrine); *Federal Trade Commission v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (agency decision to issue complaint not subject to judicial review before administrative adjudication concludes).

We emphasize that we are not retreating from our settled position that a government appeal should not be rejected on "hypertechnical jurisdictional grounds." *United States v. Humphries*, 636 F.2d 1172, 1175 (9th Cir. 1980) *cert. denied*, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981). Were a new trial order appealable under section 1291, the Government's right to prosecute the appeal under section 3731 would be well taken since there appear to be no constitutional barriers to such an appeal.

In sum, the Government must show that it is empowered to prosecute an appeal under section 3731 and that the challenged order is a final decision under section 1291. Just as section 1291 is insufficient, standing alone, to authorize a government appeal in a criminal case, *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), section 3731 is insufficient, standing

430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642   (1977) (judgment of acquittal).

alone, to confer appealability before retrial upon an order granting a new trial.[9]

Thus, in light of the policies militating against appellate review of new trial orders, and our unwillingness, as expressed above, to construe section 3731 as abolishing the final judgment rule, we conclude that an order granting a new trial in a criminal case is not appealable before retrial. Therefore, the appeal as to count 1 is dismissed.

## Count 1: Writ of Mandamus

Asserting that this case presents extraordinary circumstances, the Government also petitions for a writ of mandamus directing reinstatement of the guilty verdict on count 1. This court has the authority to issue a writ of mandamus under 28 U.S.C. § 1651.

■ It is not the office of mandamus to correct erroneous interlocutory orders that are within a district court's prescribed jurisdiction. *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *In re United States*, 598 F.2d 233, 236 (D.C. Cir. 1979). Moreover, mandamus may not be used to thwart the congressional policy against piecemeal appeals. *Parr v. United States*, 351 U.S. 513, 521, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956). We decline to issue the writ.

## Count 3: Judgment of Acquittal

Count 3 charged appellee with transporting stolen merchandise (furs) having a value of $5,000 or more in violation of 18 U.S.C. § 2314. The price of the furs in Canadian currency was the only evidence of their value. The Government failed to introduce evidence of the 1978 exchange rate between American and Canadian currencies. Before the jury was discharged, the Government also failed to ask the court to

take judicial notice of the exchange rate and to instruct the jury pursuant to F.R. Evid. 201(g).[10] In granting judgment of acquittal after the jury returned a verdict of guilty on Count 3, the district court concluded that there was no evidence from which the jury could reasonably have inferred that the value of the furs was $5,000 or more in American dollars.

■ The test for determining whether to grant a motion for judgment of acquittal under Rule 29(c) is whether at the time of the motion, viewing the evidence in a light favorable to the Government, there was relevant evidence from which the jury could reasonably find the accused guilty beyond a reasonable doubt of each element of the crime charged. *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977).

■ Proof that the value of the transported property was $5,000 or more is an essential element of a violation of 18 U.S.C. § 2314. *United States v. Chandler*, 586 F.2d 593 (5th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 583 (1979); *United States v. Whetzel*, 589 F.2d 707 (D.C. Cir. 1978); *see United States v. Atherton*, 561 F.2d 747 (9th Cir. 1977). In the absence of any proof of value in American dollars, the jury should not be permitted to speculate on this point merely from the Canadian price of the property. *Cf. United States v. Wilson*, 284 F.2d 407, 408 (4th Cir. 1960) (jury not permitted to speculate on whether value of property exceeded $100 to establish felony rather than misdemeanor conviction). We agree with the Fifth Circuit that although "the $5,000 requirement was not designed to protect those who transport property of a lesser value but rather to avoid overtaxing the federal judicial system, its effect is to leave

---

9. This is supported by our decision in *United States v. Hetrick*, 644 F.2d 752 (9th Cir. 1981), in which the Government sought review of a sentencing order. We noted that the sentencing order was a final decision under section 1291, and held that the Government was empowered under section 3731 to prosecute the appeal since review of the challenged order did not implicate the Double Jeopardy Clause of the Fifth Amendment.

10. F.R.Evid. 201(g) states:

(g) Instructing jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

the punishment of such persons to the states and to make the limitation an essential part of the federal crime." *United States v. Chandler*, 586 F.2d at 602 (footnote omitted). The judgment of acquittal on count 3 is affirmed due to lack of evidence on an essential element of the crime charged.[11]

## Conclusion

Before retrial, an order granting a new trial in a criminal case is not appealable under 28 U.S.C. § 1291. 18 U.S.C. § 3731, standing alone, does not confer appellate jurisdiction over such an order. The issuance of a writ of mandamus directing reinstatement of the guilty verdict on count 1 is not warranted, and the district court did not err in granting a judgment of acquittal on count 3.

AFFIRMED.

POOLE, Circuit Judge, concurring and dissenting:

I join with the majority as to Count I but must dissent from affirmance of the post-verdict judgment of acquittal on Count III.

The majority concludes that the jury could not find beyond a reasonable doubt that the value of the fur coats ($13,690 in Canadian Dollars) equaled the sum of $5,000 in United States Currency, because the government did not offer proof of the exchange rate in effect at the time. The four cases cited to support this conclusion are clearly distinguishable for in each the reviewing court reversed only after finding total absence of any evidence of value submitted to the jury.

In *United States v. Wilson*, 284 F.2d 407 (4th Cir. 1960), the government offered no proof of the value of 72 stolen rifles and the court noted that had evidence been introduced for even a single rifle it would have been sufficient to support the jury's verdict. Similarly, in *United States v. Whetzel*, 589 F.2d 707 (D.C. Cir. 1978), the government introduced no evidence of the market value of stolen tapes but instead tried to measure their value by the song recorded thereon. The court rejected the approach, holding that under 18 U.S.C. § 2314 the value of the property transported had to be in excess of $5,000 and the only evidence of market value in the record fell far short of the required amount. Again in *United States v. Chandler*, 586 F.2d 593 (5th Cir. 1978), the government could not prove the value of stolen gasoline transported by trucks because it was unable to establish the amount of gasoline carried by each truck, a figure crucial to its value computation. Finally, in *United States v. Atherton*, 561 F.2d 747 (9th Cir. 1977), the conviction for transporting a stolen 16mm print of the "Exorcist"

11. The dissent suggests that the trial court in ruling on defendant's motion for judgment of acquittal under F.R.Crim.P. 29(c) should have taken judicial notice, pursuant to F.R.Evid. 201, of the American/Canadian Exchange Rate. For a court, however, to take judicial notice of an adjudicative fact after a jury's discharge in a criminal case would cast the court in the role of a fact-finder and violate defendant's Sixth Amendment right to trial by jury. *United States v. Jones*, 580 F.2d 219 (6th Cir. 1978). In *Jones* the Sixth Circuit dealt with essentially the same problem in the context of an appellate court's power under F.R.Evid. 201(f) to take judicial notice "at any stage of the proceedings." The court held that it could not take judicial notice on appeal of the fact that Southern Central Bell Telephone Company was a common carrier that provided facilities for the transmission of interstate or foreign communications. The court noted that under F.R.Evid. 201(g) the jury in a criminal case may, but is not required to, accept as conclusive any fact

judicially noticed. Indeed, for a trial court (in a post-verdict motion) or an appellate court to take judicial notice of an adjudicative fact in a criminal case would frustrate the policies Congress sought to achieve in providing in F.R. Evid. 201(g) that a jury is not required to accept as conclusive a judicially noticed fact. These policies are to preserve the jury's traditional prerogative, in a criminal case, to ignore even uncontroverted facts in reaching a verdict and to prevent the trial court from violating the spirit of the Sixth Amendment right to counsel by directing a partial verdict as to facts. *United States v. Jones*, 580 F.2d at 223–24; see also "Note of Committee of the Judiciary" H.R. No. 93–650, 93d Cong., 1st Sess. 6–7, *reprinted in* (1974) U. S. Code Cong. & Admin. News 7051, 7075, 7080. Another point: just because a fact may be generally known does not mean that the need to introduce evidence of that fact, or to request that it be judicially noticed, is dispensed with automatically. As Mr. Dooley once said: "Nuth'n walks itself into evidence."

was reversed because the government only presented evidence of the value of prints suitable for theatre exhibition although the evidence clearly established that the 16mm print was not in that category.

In the instant case, our problem is not to determine value; rather, we must calculate the rate of exchange of Canadian to United States dollars on a specific historical date. It is not disputed that the reasonable market value of the coats was proven to be $13,690 in Canadian dollars. The evidence consisted of the price tags removed from the coats and the testimony of the shopkeepers from whom the coats were stolen. As competent evidence was before the jury, the only issue is whether the jurors could find beyond a reasonable doubt that $13,690 Canadian dollars equaled $5,000 American dollars at the time of the theft.

Seattle, the place of trial, is approximately 100 miles from the long Canadian border. The two countries share a long history of cultural, personal and trade relations sustained and encouraged by easy and warm reciprocal travel on many levels. They interconnect by multi-lane superhighways. Out of this proximity and close relationship the jurors, as people of both countries everywhere, could easily have possessed the elementary and practical knowledge of the worth of Canadian currency.

But even assuming that jurors living so near the Canadian border did not possess such undisputed information about the 1978 exchange rate, the exact American/Canadian Exchange, could and should have been judicially noticed by the trial judge both at trial and when considering, after verdict, the Rule 29 motion. Had the judge done so she would have ruled that the ratio was in fact $1.00 Canadian to $0.877 United States. Therefore, that $13,690 Canadian Dollars was the equivalent in United States currency of approximately $12,006—was not at the time of trial, and it still is not, a fact open to "reasonable dispute" within the intendment of the Federal Rules of Evidence, because, even were it not a matter "generally known within the territorial jurisdiction of the trial court," it positively was

"capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and this is all that a reasonable rule and a reasonable mind could require. There are myriad commercial, trade, financial and other publications, including daily newspaper files, daily quotes, all carried in every major newspaper. To have overturned this jury verdict because the court treated as a disputable variable what was unalterable historical fact, does scant to hold the judicial process in respect.

The majority has cited *United States v. Jones*, 580 F.2d 219 (6th Cir. 1978), as authority for a proposition that facts of the kind involved here cannot be the subject of judicial notice. That is not what that case holds. The Sixth Circuit seems to have said that there are judicially noticeable matters which the jury may not be bound to accept. This may be true; but there is such an obvious distinction between "whether South Central Bell was a common carrier which provided facilities for the transmission of interstate or foreign communications," the issue involved in that case (580 F.2d at 222), and the issue here—the exchange rates between the United States Dollar and the Canadian Dollar on a given past date—that reference to *Jones* seems only to compound further an already antic result. Whether a jury in a criminal case has the naked *power* to disregard the truth is not at issue: this jury did not do so. We therefore need no more debate one's right to declaim that more than twice $5,000 is yet less than $5,000 than that Nina, Pinta and Santa Maria might well have fallen off the earth.

I would reverse the judgment which granted the Rule 29 motion for judgment of acquittal and would order the jury verdict reinstated.