Joe David BANKS, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Defendant-Appellee.

No. 80–3368.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1981.

Decided Aug. 27, 1981.

Donna R. Meyer, Oregon Legal Services Corp., Albany, Or., for plaintiff-appellant.

Richard H. Wetmore, Sidney I. Lezak, Asst. Reg. Attys., Portland, Or., for defendant-appellee.

Before ALARCON and BOOCHEVER, Circuit Judges, and THOMPSON,* District Judge.

BOOCHEVER, Circuit Judge:

In this appeal, we consider the scope of official notice in a Social Security Administration hearing (SSA) before an administra-

* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

tive law judge (ALJ). We hold that although the ALJ might properly take official notice of facts concerning the procedures of an SSA District Office, the claimant, Joe Banks, was not afforded an opportunity to introduce evidence in rebuttal. Consequently, we order the case to be remanded to the Secretary.

The evidence indicated that while on state welfare, Banks began receiving supplemental security income disability (SSID) benefits in 1976. Thereafter, he applied for social security disability insurance benefits (SSDB). He signed a statement indicating that he understood that he could receive both benefits and knew the effect of SSDB on his SSID. Moreover, he acknowledged that he might receive an SSID overpayment in the first quarter that he would receive SSDB. Banks testified that a social security representative explained this to him, but told him to call when he got the checks and the representative would inform him whether he could keep them or not.

In the second quarter of 1977, Banks received his first SSDB check for $2,604. He also got SSID checks for April and May of 1977 totaling $335. Banks testified that he called the social security office and talked to "the guy I usually talk to." Banks described the color of the checks and told him the amounts of the respective checks.[1] According to Banks, the representative said that Banks was entitled to the checks and that the green check for approximately $2,600 was a social security make-up check. Banks "figured" the make-up check was for the two years when he filed for SSDB and was turned down, and not the regular SSDB check he would eventually receive. In fact, he was entitled to the retroactive SSDB check, but not the SSID checks totaling $335. After allegedly being told that he was entitled to the money, Banks spent the entire amount within three days to pay his bills and buy some clothes.

When Banks received an overpayment notice for $335, he went to the social security office, but did not ask to speak with the person who had told him that he was entitled to keep the checks. According to Banks, he was told that a different person handled overpayment notices.

■ When the SSA learned that Banks had been overpaid, it sought recovery. Banks requested that the overpayment be waived, but the request was denied. Under the SSA's regulations, Banks could avoid repayment only if he showed that: (1) he was without fault and (2) recovery would defeat the purposes of the Social Security Act (Act), be against equity or impede efficient administration of the Act. 20 CFR 416.550–54.[2]

Banks sought and was granted an administrative hearing. In his written opinion prepared at the conclusion of the hearing, the ALJ found that Banks' testimony was incredible. The ALJ first stated that he had "some familiarity" with a Social Security District Office and that based on that knowledge he inferred that "no ... representative ... empowered to deal with claims would tell anyone that he should cash and spend SSI checks for the same quarter in which he received a large SSA check". The ALJ stated that Banks may have called the office and asked if he could spend the SSI checks, but, if so, he did not state that he received the SSA check. In addition, the ALJ disbelieved Banks because: (1) the details of his testimony were unconvincing and the testimony was glib; (2) when notified of the overpayment he did not ask to see, and made no further attempt to locate, the representative who allegedly authorized him to spend money; and (3) he spent the money almost immediately. Accordingly, the ALJ held that Banks was not without fault, and therefore not entitled to keep the overpayment.

Banks appealed the ALJ's decision to the SSA's Appeals Council contending the ALJ

---

1. Banks' mother testified that she was present when he called the office and that she heard him describe the checks and their amount.

2. *See Sierakowski v. Weinberger*, 504 F.2d 831, 836 (6th Cir. 1974), *Kendrick v. Califano*, 460 F.Supp. 561, 570 (E.D.Va.1978), 42 U.S.C. § 1383(b)(1).

took improper administrative notice. The Appeals Council affirmance of the ALJ's decision became the final decision of the Secretary. *See* 20 CFR § 416.1470. Thereafter, Banks filed an action for review of the decision in district court which affirmed the SSA's decision. This timely appeal followed.

Banks contends that: (1) by taking the administrative notice of facts, the SSA has violated the Act and the SSA's own regulations; (2) assuming that notice was proper, he was impermissibly denied the opportunity to rebut the evidence; and (3) the SSA's decision was not supported by substantial evidence. These contentions are interrelated.

■ We shall first consider whether the ALJ properly took official notice of the practices and customs of SSA district offices.[3] Banks argues that since 42 U.S.C. § 1383(c)(1) of the Act and the agency's regulations, 20 CFR 416.1457(a), require that the Secretary's decision be based on evidence adduced at the hearing, it is improper to take official notice in disability cases.

■ If read literally, these provisions do prohibit the use of official notice in disability cases. Congress, however, clearly did not intend a literal interpretation for it would be difficult for any agency to function without taking official notice. 3 K. Davis, *Administrative Law Treatise* § 15:18, at 200 (2d ed. 1980) (hereinafter cited as "Davis").

Since official notice cannot be completely forbidden, the literal interpretation has to give way to a determination on the basis of fairness and efficiency of what the scope of official notice should be, of the circumstances when it may be invoked, and of the procedural protections that should be required when official notice is taken.

*Id.* at 201

Nor can it be said that the SSA intended that official notice should not be taken. The permissible scope of official notice depends upon whether a "rule of convenience" or a "rule of caution" is applied.

■ Under Rule 201(b) of the Federal Rules of Evidence, judicial notice of adjudicative facts is limited to facts that are "not subject to reasonable dispute." The Advisory Committee notes make clear that limitation upon taking judicial notice is to further the tradition that extreme caution should be used in taking notice of adjudicative facts. Fed.R.Evid. 201, subdivision (b). The reason for this tradition is the belief that the taking of evidence, subject to established safeguards, is the best way to resolve controversies involving disputes of adjudicative facts. *Id.* A rule of extreme caution may be unwarranted in view of the right to a hearing now provided by Rule 201(e).[4] In any event, under SSA regulations, "[e]vidence may be received at the hearing even though inadmissible under rules of evidence applicable to court procedures." 20 C.F.R. § 416.1442. Thus Rule 201 is not applicable.

■ We believe that the SSA may, within the scope of its discretion, adopt a rule of convenience. Because the SSA must handle a huge volume of cases[5] and the

---

**3.** This is an adjudicative fact because it is a fact "concerning the immediate parties." For a discussion of the difference between adjudicative facts and legislative facts, see the Advisory Notes to Fed.R.Evid. 201 and 3 K. Davis, *Administrative Law Treatise* § 15:5 (2d ed. 1980) (hereinafter cited as "Davis").

**4.** Professor Davis comments:

After taking into account the criticism of its proposed rule, [that it does not allow parties to challenge the noticed facts] the Advisory Committee changed it. As adopted, Rule 201(e) provides that a request for hearing on the noticed fact "may be made after judicial notice has been taken."

Caution was necessary and proper when the rule did not allow parties to challenge noticed facts, but caution became unnecessary after the rule was changed to allow such a challenge. Yet the Advisory Committee, after changing the rule, failed to change its Note on Rule 201(b), which was based on the earlier version of the rule. *Davis* § 15:17, at 197.

**5.** *See Dobrowolsky v. Califano,* 606 F.2d 403, 409 n.18 (3rd Cir. 1979) (SSA received 92,000

ALJ has the affirmative duty in such cases for developing the facts fairly,[6] the ALJ should take notice of adjudicative facts, whenever, "the ALJ at the hearing knows of information that will be useful in making the decision." Davis § 15:18 at 200. The Supreme Court has recognized a difference between evidence which is to be admitted at SSA administrative hearings and litigation in a court. See Richardson v. Perales, 402 U.S. 389, 400–01, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1974). We refuse to follow the cases, relied upon by Banks, which have indicated that a restrictive approach is appropriate in delineating the scope of official notice.[7] We hold that the ALJ acted properly in taking official notice of the district office customs and practices.[8]

When the rule of convenience is applied to allow wide latitude in taking official notice, however, it is essential that the parties be afforded an opportunity to present information "which might bear upon the propriety of noticing the fact, or upon the truth of the matter to be noticed." C. McCormick, Law of Evidence § 333, at 771 (2d ed. 1972). In fact, the administrative procedure act in 5 U.S.C. § 556(e) requires that when an agency decision rests on official notice, a party be given "on timely request, ... an opportunity to show the contrary." The SSA's own regulations recognize the importance of the opportunity helpful to a claimant's case by providing that the claimant may request subpoenas, see 20 CFR 416.1440, or permitting continuances, see 20 CFR 416.4441.

When the facts in this case were noticed, Banks was entitled to an opportunity to introduce the contrary evidence if a timely request was made. The failure to afford such an opportunity is grounds for remanding the case to the Secretary. See McDaniel v. Celebrezze, 331 F.2d 426, 428 n.4 (4th Cir. 1964). Because Banks was never given such an opportunity, the case must be remanded if Banks made a timely request.

██ This in turn depends upon when the ALJ took official notice.

When official notice is taken after the hearing rather than at the hearing, the difference between information introduced as evidence and officially noticed information may be a large one, but the difference relates only to adequacy of opportunity "to show the contrary," and not to anything else. If the claimant has a chance to show the contrary at a reopened hearing and if he is not inconvenienced by having his chance at the reopened hearing instead of at the original hearing, then his procedural interest is as fully protected as it would have been by introducing the noticed facts as a part of the evidence at the original hearing.

Davis § 15:18, at 201.[9] If the ALJ did not take official notice until his written decision, then Banks made a timely objection because he requested the SSA's Appeals Council to review the ALJ's decision on the grounds that the ALJ took improper administrative notice.

██ During the hearing a colloquy occurred during which the ALJ discussed the agency's procedures.[10] Although an ALJ is

---

requests for hearings on disability insurance benefits in 1978).

**6.** See Sellars v. HEW, 458 F.2d 984, 986 (8th Cir. 1972); Dunbar v. Califano, 454 F.Supp. 1261, 1268 (W.D.N.Y.1978).

**7.** See, e. g., Little v. Califano, 462 F.Supp. 575, 580 (W.D.N.C.1978); Chism v. Secretary of HEW, 457 F.Supp. 547, 560 (C.D.Cal.1978); Cook v. Celebrezze, 217 F.Supp. 366, 368 (W.D. Mo.1963).

**8.** Although we believe the ALJ might properly take official notice of district office customs and practices as some indication of the probability that Banks was told to cash the checks,

we do not share his belief that such practices are invariably followed or that district offices give infallible advice. See, e. g., Kendrick v. Califano, 460 F.Supp. 561, 570–71 (E.D.Va. 1978).

**9.** For a general discussion, see Davis § 15:15 (procedures for challenging facts an agency uses an adjudication).

**10.** The following exchange took place:

MR. BANKS: ... I told him I got these three checks in the mail and I hadn't cashed them yet. He said I had to find out—'cause I had a green one—it was social security, plus my other two SSI checks and I said I got two

not generally required to give a claimant advance notice of his intent to take official notice,[11] the ALJ must adequately inform the claimant that he is, in fact, taking official notice and must indicate that facts noticed and their source with a degree of precision and specificity. *Id.* at 200, 203–204. Without such information, a party cannot be expected to offer an objection. Clearly, if the ALJ stated "I take official notice of this fact," or gave similar indication the requirement would be fulfilled. We do not believe the ALJ's passing reference at the hearing made it sufficiently clear that he was taking official notice of the agency's procedures. Thus, Banks could not have been expected to offer an objection.[12]

The ALJ's written decision stated with clarity that he was noticing the fact that it is not the customary practice for social security employees to tell claimants to cash and spend checks when there is some doubt as to whether there has been an overpayment. Banks filed formal objections to the written decision's notice of this fact and the filing was timely. He was denied the opportunity to respond. Accordingly, the judgment of the district court is REVERSED, and the case must be REMANDED to the Secretary.

gold ones and a green one and I told him the amount of them and I said, "Shall I bring them in or something?" He said, "No, they're your checks that you're supposed to be getting every month and that your green one was social security make-up check for when I filed." And he says, "You're entitled to that," so I said, "Then that's all (inaudible)" He said, "Yes,"—that I had to notify them.

ALJ: How much was the social security— SSA check—the disability insurance benefit check?

MR. BANKS: It's $2200 I think it was.

ALJ: Are you telling me that you told him that you got a $2200 check the same time you got that and he said "Cash it."

MR. BANKS: He said I was entitled to it. He said that was for my back—

ALJ: Did he say, "Cash it."

MR. BANKS: I can't remember—

ALJ: This is exactly contrary to the training of everybody in the whole bureau. (inaudible)

MR. BANKS: Well, I can't remember if he said "Cash it." He said I was entitled to it.

ALJ: On what ground?

MR. BANKS: For—for when I filed twice before, he said I'd be getting a make-up check.

ALJ: For SSA, yes, but how about SSI? Did he say that you were entitled to SSI checks?

MR. BANKS: Oh them SSI checks weren't that much. The SSI checks were only $176.

ALJ: Well, go ahead. I might say to you that is—they make mistakes there, but that's the sort of mistake that almost nobody would make if you explained it just in those terms unless they're incompetent entirely. I don't know.

11. Cf. *Davis* § 15:6, at 195–6. [W]hen [noticed] facts . . . could be reasonably challenged and they importantly affect the decision, giving the parties a pre-decision chance to respond to them may be an essential part of fair procedure.

*See also* C. McCormick, *Law of Evidence* § 333, at 771–72 (2d ed. 1972).

12. Banks was represented at the hearing by counsel. We need not decide now whether more safeguards would be required to be given a *pro se* claimant such as informing the claimant of the right to rebut, to a continuance, to request subpoenas.