**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* <br><br> v. <br><br> RYAN PATRICK MICHELL, *Defendant-Appellant*. | No. 19-10059 <br><br> D.C. No. 2:17-cr-01690-GMS-1 <br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Argued and Submitted July 25, 2022
San Francisco, California

Filed February 15, 2023
Amended April 14, 2023

Before: Susan P. Graber and Kim McLane Wardlaw,
Circuit Judges, and M. Miller Baker,[*] International Trade
Judge.

Opinion by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Baker

---

[*] The Honorable M. Miller Baker, International Trade Judge for the United States Court of International Trade, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel amended a February 15, 2023, opinion affirming the defendant's 2018 convictions for unlawful possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2); denied a petition for panel rehearing; and denied on behalf of the court a petition for rehearing en banc.

The defendant was convicted in 1997 of felony assault with a deadly weapon committed while he was a juvenile. In 2016 and 2017, he pleaded guilty to two aggravated DUIs, which were felonies committed in 2003 while he was an adult. Relying on the Supreme Court's post-conviction decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the defendant argued on appeal that his 2018 convictions should be overturned due to the district court's failure to instruct the jury that the government must prove that he belonged to the relevant category of persons barred from possessing a firearm.

It was undisputed that the district court's failure to instruct on the *Rehaif* knowledge element was error and that the error was plain. The panel held, however, that the defendant cannot show that this error affected his substantial rights. In so holding, the panel did not need to reach whether being convicted as a juvenile or having been incarcerated for more than a year as a result of a juvenile conviction satisfies the *Rehaif* mens rea requirement. The panel held that the defendant's two DUI convictions unambiguously

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

demonstrate that there is no reasonable probability that a jury would find that the defendant did not know he had been convicted of a crime punishable by a year or more in prison at the time he possessed the firearm.  The panel explained that the defendant's 2016 plea agreement and conviction documents for one of the DUIs prove beyond a reasonable doubt that he knew in 2017 that he had been convicted of a crime punishable by more than one year.  The defendant contended that because the plea agreements were not presented to the jury at trial, this court cannot take judicial notice of judicial records reflecting the defendant's plea agreement in the 2016 felony case.  The panel explained that this contention contravenes the Supreme Court's decision in *Greer v. United States*, 141 S. Ct. 2090 (2021) (holding that appellate panels reviewing *Rehaif* instructional errors may consider information about a defendant's prior convictions in a pre-sentence report), and Ninth Circuit authority.  Distinguishing *United States v. Dior*, 671 F.2d 351 (9th Cir. 1982), the panel wrote that this court's precedent is clear that it can and should take judicial notice of facts outside the record on plain-error review to answer the question whether there is a reasonable probability that, *in a new trial*, a jury would acquit a defendant.  The panel wrote that additional record evidence—including the defendant's repeated statements that he knew his DUI convictions made him a "prohibited possessor" of firearms under federal law—further demonstrates that the defendant clearly understood that he belonged to the category of persons barred from possessing a firearm.

The panel amended the opinion to add a footnote concerning Michell's contention that the indictment was fatally deficient since it failed to plead the *Rehaif* mens rea requirement.  As the same plain error review standard

applies to indictments as jury instructions under *Rehaif*, the panel held that the error did not affect Michell's substantial rights and does not warrant the reversal of his conviction.

Court of International Trade Judge Baker concurred in part and dissented in part. He agreed with the majority that this court should grant the government's motion to take judicial notice of evidence outside the record. But in his view—even after taking that additional evidence into account—it's a coinflip as to whether a properly instructed jury would convict the defendant in a new trial. Because Judge Baker thinks the defendant has easily carried his burden of showing a reasonable probability of acquittal in such a trial, he dissented from the majority's affirmance of the conviction.

---

## COUNSEL

Michele R. Moretti (argued), Law Office of Michele R. Moretti, Lake Butler, Florida, for Defendant-Appellant.

Peter S. Kozinets (argued), Assistant United States Attorney; Rachel C. Hernandez; Kristen Jennifer Brook; Krissa M. Lanham, Appellate Division Chief; Gary M. Restaino, United States Attorney; Office of the United States Attorney, Phoenix, Arizona; for Plaintiff-Appellee.

**ORDER**

The opinion filed February 15, 2023 and appearing at 60 F.4th 518, is amended by the amended Opinion filed concurrently with this order.

With this amendment, the panel unanimously votes to deny the petition for rehearing en banc, and a majority of the panel votes to deny the petition for panel rehearing. Judge Wardlaw votes to deny the petition for panel rehearing and rehearing en banc, and Judge Graber votes to deny the petition for panel rehearing and recommends denying the petition for rehearing en banc. Judge Baker recommends that the panel deny the petition for rehearing en banc but votes to grant the petition for panel rehearing.

The full court has been advised of the petition for rehearing en banc, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for panel rehearing and rehearing en banc, filed March 17, 2023, is DENIED. No further petitions for panel rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

**OPINION**

WARDLAW, Circuit Judge:

Ryan Michell appeals his 2018 convictions for unlawful possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Relying on the Supreme Court's subsequent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Michell argues that his convictions should be overturned due to the district court's failure to instruct the jury that the government "must prove both that the defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm," which he argues was plain error. *Id*. at 2200 (emphasis added). We have jurisdiction under 28 U.S.C. § 1291, and we affirm the convictions.

**I.**

In 2017, FBI agents began investigating Michell's possible involvement in manufacturing a chemical weapon. During that investigation, the agents discovered that Michell had been convicted of several felonies—assault with a deadly weapon in 1997 and two aggravated DUIs in 2017—and found photographs on his Facebook profile showing him firing various firearms. On December 1, 2017, the agents executed a search warrant at Michell's home and seized four live rounds of Lapua .338 ammunition, 50-60 spent cartridge cases of various calibers, and a used shooting-practice target.

A search of Michell's phone uncovered postings that he had made on Backpage.com listing firearms for sale, as well as text messages between Michell and a potential buyer, Nicholas Riddle. In the messages, Riddle expressed interest in purchasing one of Michell's rifles. Michell, in turn,

provided more background about the weapon, including that he had purchased it "used years ago," that he had taken it out only "a few times, maybe 100 rounds" because he preferred to use his "other toys," so this one was "gathering dust in [his] gun safe." Michell also stated that he had a number of other firearms for sale. Riddle agreed to purchase a rifle, two high-capacity 30-round magazines, and 100 rounds of ammunition for $400, and Michell sent him the address where they could meet for the sale. Riddle later identified the man who met him at that address as Michell.

Shortly thereafter, agents arrested Michell, who agreed to submit to a video-recorded interview. During the interview, Michell stated that he did not have guns because of his felony status:

> Michell: I gave [my ex-fiancée] money . . . to buy guns . . . but she's legal to have them . . .
>
> Agent: But you don't have guns because of –
>
> Michell: I don't have guns. I'm a felon. I mean, I'd love to eventually expunge my – I mean, I – I love – I love to shoot and pick up another hobby like that, but I don't have any guns, no, sir.

On February 27, 2018, a grand jury returned an indictment charging Michell with two counts of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of a weapon and ammunition by a prohibited person. The jury found Michell guilty on both counts, and the court sentenced him to 30 months in prison and three years of supervised release. A few months after Michell was sentenced, the Supreme Court clarified the mens rea requirement for felon-in-

possession offenses in *Rehaif*.  The Court held that, to obtain a conviction, the government must prove not only that the defendant knew that he possessed a firearm, but also that he knew that "he belonged to the relevant category of persons barred from possessing a firearm."   139 S. Ct. at 2200. Because Michell's trial occurred before *Rehaif* issued, Michell did not request, and the district court did not give, a jury instruction requiring the jury to find that Michell knew he belonged to a "relevant category," that is, that he knew he had been convicted of a crime punishable by more than a year in prison when he possessed the firearm.  *See United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020).   After *Rehaif* issued, Michell timely appealed and argued that the failure to instruct the jury on the second knowledge element was plain error, requiring the reversal of his convictions.

## II.

We review the failure to give a *Rehaif* instruction under these circumstances for plain error.  *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021).  "To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements."  *Id.* at 2096.  There must be a (1) "error" (2) that was "plain" and (3) that "affect[s] 'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'"  *Id.* (citation omitted).

It is undisputed that Michell has satisfied the first two prongs of the plain error standard: there was an error and it was plain.  *See United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019) (holding that the failure to instruct that the jury must find the defendant knew he was a felon when he possessed the firearm in a § 922(g) prosecution is plain

error).   However, Michell cannot show that this error affected his substantial rights.  Due to at least two of his prior convictions, all punishable by more than one year in prison, there is no "reasonable probability" that a jury would find that Michell did not know he had been convicted of a crime punishable by a year or more in prison at the time he possessed the firearm.  *Greer*, 141 S. Ct. at 2096–97.

## A.

Section 922(g)(1) renders a prohibited possessor any person who has been convicted of a crime "punishable by imprisonment for a term exceeding one year."   Michell served two years in prison for his first conviction, an aggravated assault in 1997, which was committed when he was a juvenile.

Michell contends that, because Michell's 1997 conviction was for an offense committed while he was a juvenile, reasonable doubt exists regarding whether Michell understood his aggravated assault conviction classified him as a felon.   As Justice Sotomayor stated in *Greer*, "a defendant may not understand that a conviction in juvenile court . . . can be a felony for purposes of federal law."  141 S. Ct. at 2103 (Sotomayor, J., concurring).  However, while it is possible that Michell did not understand that his juvenile conviction was a felony, we need not and do not reach the question of whether being convicted as a juvenile or having been incarcerated for more than a year as a result of a juvenile conviction satisfies the *Rehaif* mens rea requirement here.  Michell's two DUI convictions, which occurred when he was an adult, unambiguously demonstrate that there is no "reasonable probability" that a jury would find that Michell did not know he had been convicted of a crime punishable

by a year or more in prison at the time he possessed the firearm. *Greer*, 141 S. Ct. at 2096–97.

**B.**

In 2016 and 2017, Michell pleaded guilty to two DUIs, committed in 2003, that occurred in Maricopa County and Pinal County (each punishable by up to three years and nine months in prison). Michell's 2016 plea agreement and conviction documents for the aggravated DUI in Maricopa County prove beyond a reasonable doubt that he knew in 2017 that he had been convicted of a crime punishable by more than a year in prison. Specifically, *on the first page of the plea agreement*, the first term initialed by Michell indicates he understood that:

> The crime carries a presumptive sentence of
> **2.5** years; a minimum sentence of **1.5** years;
> a mitigated sentence of **1** year; a maximum
> sentence of **3** years; and an aggravated
> sentence of **3.75** years.

Because the plea agreements were not presented to the jury at trial, Michell argues that we cannot take judicial notice of judicial records reflecting Michell's plea agreement in the 2016 Maricopa County felony case, *State of Arizona v. Michell*, CR2004-038904 (Dkt. 95), under Fed. R. Evid. 201(d). However, this contention contravenes clearly established Supreme Court and Ninth Circuit authority.[1] When an appellate court conducts plain-error review of a *Rehaif* error, any "argument that plain-error

---

[1] Michell does not challenge the authenticity of the documents. We therefore grant the government's motion to take judicial notice of the records of conviction for the two Arizona DUI offenses (Dkt. 95).

review must focus exclusively on the trial record contravenes both logic and precedent." *Greer*, 141 S. Ct at 2098 (holding that appellate panels reviewing *Rehaif* instructional errors may consider information about a defendant's prior convictions in a pre-sentence report). Following the Supreme Court's lead, the Ninth Circuit has frequently looked outside the trial record when deciding *Rehaif* claims. *See Benamor*, 937 F.3d at 1189 (looking to non-jury evidence of prior convictions in considering a *Rehaif* claim of error); *United States v. Hearns*, 836 Fed. App'x 520, 522 (9th Cir. 2020) (unpublished) ("Because the records are the proper subject of judicial notice and declining to take judicial notice would 'merely be delaying the inevitable,' the Court grants the Government's uncontested motion." (citation omitted)); *United States v. Valencia-Barragan*, 819 Fed. App'x 508, 511 n.3 (2020) (unpublished) ("We grant the Government's motion to take judicial notice of certain conviction-related documents for purposes of Valencia's *Rehaif*-based claim.").**[2]**

---

[2] Indeed, most circuits have held that it is permissible to take judicial notice of facts outside the record for *Rehaif* claims on plain error review. *See United States v. Ward*, 957 F.3d 691, 695 & n.1 (6th Cir. 2020) (holding that appellate courts have authority to consult non-jury evidence on plain error review, including plea agreements); *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (considering facts not presented at trial, including admissions that occurred at sentencing); *United States v. Huntsberry*, 956 F.3d 270, 284–86 (5th Cir. 2020) (taking judicial notice of conviction records to reject *Rehaif* claims); *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (taking judicial notice of state court conviction documents in *Rehaif* appeal); *United States v. Miller*, 954 F.3d 551, 559–560 (2d Cir. 2020) (holding that appellate panels could consider information from a pre-sentence investigation report in evaluating a *Rehaif* claim).

Despite this controlling precedent, Michell chooses to rely upon dicta in a footnote in our 1982 decision in *United States v. Dior*, 671 F.2d 351 (9th Cir. 1982), upholding a judgment of acquittal because the government failed to prove an essential element of the crime. Rejecting the dissent's suggestion that the majority simply could have taken judicial notice of that element, we said for a court to "take judicial notice of an adjudicative fact after a jury's discharge in a criminal case would cast the court in the role of a fact-finder and violate defendant's Sixth Amendment right to trial by jury." *Id.* at 358 n.11. Michell contends that his 2016 plea agreement constitutes an "adjudicative fact," sweepingly defined as any fact "concerning the immediate parties." *Banks v. Schweiker*, 654 F.2d 637, 640 n.3 (9th Cir. 1981) (citation omitted). But we do not review de novo here, and *Dior* did not address at all the standards for plain-error review. In *Dior*, we held that—on mandamus review of a judgment of acquittal following a criminal conviction—we may not take judicial notice of facts to close evidentiary gaps in the government's case-in-chief, where the government failed to introduce the evidence before the jury was discharged. *Dior*, 671 F.2d at 357–58. The procedural posture of this case is wholly distinct: Under plain-error review of an instructional error, we ask simply whether there is a reasonable probability that, *in a new trial*, a jury would acquit a defendant. *Greer*, 141 S. Ct. at 2097. And our precedent is clear that we can and should take judicial notice of facts outside the record on plain-error review to answer that question, which is not tantamount to filling gaps in the government's case in an earlier trial. To do otherwise would burden courts with the expense and waste of judicial resources on retrial, even though the outcome is inevitable.

The dissent contends that we should not rely on the plea agreement because it is "hardly establish[ed] that [Michell] read the document at the time." Dissent at 25. However, the portion of the guilty plea that establishes that Michell's offense "carried a presumptive sentence of **2.5** years" is the *first initialed paragraph* of the plea agreement Michell signed *just one year* before law enforcement officers found firearms in Michell's house. The number of years of presumptive incarceration are in bold and stand out starkly in the plea agreement. Though Michell actually served less than a year in prison for each of the DUI offenses, this case is hardly analogous to *United States v. Werle*, 335 F.4th 1195 (9th Cir. 2022), which addressed whether a district court erred in summarily denying Werle's motion to vacate his guilty plea for firearm possession offenses without an evidentiary hearing in light of *Rehaif*. There, Werle had a prior conviction for which he served a sentence of a year and a day. He argued that he had extensive brain damage that affected his memory as to the length of his incarceration and his understanding that he was a felon. *Id.* at 1203. In that case, the operative question was whether the district court should have held an evidentiary hearing to allow Werle to introduce evidence that there existed a "reasonable probability that he would have proceeded to trial had he been properly informed of the elements of the offense." *Id.* at 1202. Here, on plain error review, we have the benefit of evaluating the full evidentiary record—including the trial record, Michell's presentencing report, and Michell's prior guilty pleas—to determine whether there is any reasonable probability that a jury would not find that Michell understood his conviction was punishable by more than a year in prison.

Moreover, additional record evidence demonstrates that Michell clearly understood, even before trial, that "he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. In addition to signing a plea agreement that acknowledged his 2016 conviction was punishable by over a year in prison, during the course of the investigation and trial in this case, Michell repeatedly stated that he knew his DUI convictions made him a "prohibited possessor" of firearms under federal law. For example, during a post-arrest interview, Michell stated that, although he had given his ex-fiancée money to buy guns because it was "legal" for her to have them, he did not have guns himself because he was a "felon." And at trial, he testified that he knew that both DUI convictions were felonies and that he was thus a prohibited possessor under § 922(g), stating in relevant part:

> Defense Counsel: So you know that there were aggravated DUI charges, you know to be a felony?
>
> Michell: Yes, sir.
>
> Defense Counsel: Are you a prohibited possessor?
>
> Michell: Yes, sir. After my DUI matter, that's why there was no guns, no – I mean, I'm not going to lose my opportunity to be… with my daughters.

In December 2017, when agents executed a search warrant at his home and found evidence of gun possession, Michell therefore fully understood that his DUI convictions were punishable by more than a year of incarceration. There

is no reasonable probability that a jury would find otherwise.[3]  18 U.S.C. § 922(g)(1).

## III.

For all the reasons stated above we **AFFIRM** the district court.

---

BAKER, Judge, concurring in part and dissenting in part:

The federal government prosecuted Ryan Patrick Michell—then a 38-year-old man with a minimal criminal record stemming from offenses at age 17 and in his early 20s—for having four bullets in his garage and for his involvement in the private sale of a rifle. Under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the grand jury did not properly indict Michell for this alleged violation of the felon-in-possession statute. Nor did the district court permit Michell to fully defend himself at trial, where the government failed to prove its case and where the court incorrectly instructed the jury on the elements of the charged offense.

Having served a 30-month federal prison sentence following his conviction, Michell pursues this appeal seeking only an opportunity for a new trial to clear his name. Although I agree with the majority that we should grant the

---

[3] Michell additionally contends that the indictment was facially deficient since it failed to plead the *Rehaif* mens rea requirement.  As the same plain error review standard applies to indictments as jury instructions under *Rehaif*, *see Singh*, 979 F.3d at 370, we also hold that the error in the indictment did not affect Michell's substantial rights and does not warrant the reversal of his conviction.

government's motion to take judicial notice of evidence outside the record, in my view—even after taking that additional evidence into account—it's a coinflip as to whether a properly instructed jury would convict Michell in a new trial. Because I think he has easily carried his burden of showing a "reasonable probability" of acquittal in such a trial, I respectfully dissent from the majority's affirmance of his conviction.

I

In 1997, Michell—then 17—was convicted in Arizona of aggravated assault. He was imprisoned for 20 months, first in a juvenile detention center and then in an adult section after he turned 18.

In 2003, when he was 23–24, Michell was charged in Arizona with two separate DUIs. For reasons that are unclear, Arizona authorities waited 13 years to prosecute these charges, to which Michell agreed to plead guilty in October 2016. In early 2017 he was sentenced—as a first-time offender—to concurrent four-month prison sentences with three years' probation.

In late 2017, in response to information that Michell might be involved in creating a chemical weapon and after obtaining a warrant, federal agents raided his home. Although the search for nefarious activities related to a purported chemical weapon turned up empty, investigators found the four bullets and evidence of his involvement in the private sale of a $450 rifle at his brother's home. Michell waived the right to an attorney and fully cooperated with the investigation.

The United States Attorney for Arizona then asked a grand jury to return a superseding indictment charging

Michell with two counts of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The former makes it "unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1). The latter then specified that "[w]hoever knowingly violates . . . subsection (g) . . . of section 922 shall be fined . . . , imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).[1]

The grand jury obliged. Its indictment simply charged Michell with possession of the guns and ammunition while "having been previously convicted of a crime punishable by a term of imprisonment exceeding one year."

Before trial, the government successfully moved *in limine* for an order barring Michell from presenting any argument and evidence that might suggest he did "not qualify as a prohibited felon for purposes of 18 U.S.C. § 922(g)(1) and § 924(a)(2) because either his convictions did not render him a prohibited person or because he did not know he was prohibited." The parties also stipulated that Michell was convicted in 1997 and 2017 of crimes "punishable by a term of imprisonment exceeding one year."[2]

---

[1] While this appeal was pending, Congress moved the reference to § 922(g) from § 924(a)(2) to a new § 924(a)(8) and increased the potential penalty for § 922(g) violations to imprisonment "for not more than 15 years." *See* 18 U.S.C. § 924(a)(8) (effective June 25, 2022); *see also* Pub. L. No. 117–159, § 12,004(c), 136 Stat. 1313, 1329 (June 25, 2022).

[2] This stipulation reflected the state of circuit law as it stood as that time, under which the government did not have the burden of proving any

At trial, Michell testified he "didn't perceive that the juvenile offense would follow me the rest of my life." The government objected as to relevance, and the district court instructed Michell's counsel to "move on." A few moments later, when Michell's counsel sought to examine him on his knowledge of his legal status, the government objected on relevance grounds, which the district court sustained. The district court then instructed the jury, in the middle of trial, that "what the defendant's conclusions about the law were as it relates to his knowledge of being a prohibited possessor is not relevant." At the close of trial, the district court instructed the jury that one of the elements of the charged offense was that "[a]t the time the defendant possessed the [ammunition and firearm], the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year."

After more than three hours of deliberations, the jury returned a guilty verdict. Although the government sought a sentence of almost six years, the district court sentenced Michell to less than half that—30 months.

The following year, the Supreme Court upended longstanding law in this area. It held that "in a prosecution under 18 U.S.C. §§ 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm."

---

knowledge on the part of Michell. *See United States v. Johnson*, 459 F.3d 990, 998 (9th Cir. 2006) (characterizing various federal firearms laws, including § 922(g)(1), as "something approaching absolute liability"). The only defense available to Michell was whether in fact he possessed the rifle and ammunition.

*Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) (emphasis added).

On appeal, Michell challenges both the indictment and the jury instruction's failure to include the *mens rea* element required by *Rehaif*. Because he did not raise that issue at trial, he forfeited the claim of error under Federal Rule of Criminal Procedure 51(a). *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021).

Even so, we may consider "plain error that affects substantial rights." Fed. R. Crim. P. 52(b). There are three threshold requirements for relief under such review: (1) an error must exist (2) that is clear or obvious and (3) that affects "substantial rights." *Greer*, 141 S. Ct. at 2096. This "generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.' " *Id.* (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). "If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.' " *Id*. at 2096–97 (quoting *Rosales-Mireles*, 138 S. Ct. at 1905).

It is undisputed here that Michell satisfies the first two requirements of plain-error review. Under *Rehaif*, the grand jury's indictment was defective, because it failed to allege that when Michell possessed the ammunition and rifle he knew that he had been "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Similarly, the district court failed to include that element of the charged offense in the jury instruction.

As to the third requirement of plain-error review—
whether there is a "reasonable probability" that a jury could
find that Michell did not know at the time of the charged
conduct that he had been "convicted . . . of[] a crime
punishable by imprisonment for a term exceeding one year,"
*id.*—that "standard is not the same as, and should not be
confused with, a requirement that a defendant prove by a
*preponderance of the evidence* that but for error things
would have been different." *United States v. Irons*, 31 F.4th
702, 714 (9th Cir. 2022) (quoting *United States v.
Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)) (emphasis
in *Irons*); *see also id*. (on plain-error review, a defendant
"does not have to show that it is more likely than not that a
[correctly-instructed] jury would have acquitted him").
Instead, "[a] probability is 'reasonable'. . . if it is sufficient
to undermine confidence in the outcome of the proceeding."
*Id*. at 713–14 (cleaned up) (citing *Dominguez Benitez*, 542
U.S. at 83).

Finally, in this context of a § 922(g)(1) charge, we also
ask whether "a defendant who is a felon [makes] an adequate
showing on appeal that he [c]ould . . . present[] evidence in
the district court that he did not" possess the necessary *mens
rea* at the time of the charged conduct. *Greer*, 141 S. Ct. at
2097.

## II

Given the evident problems with relying on Michell's
juvenile conviction as a felon-in-possession predicate, *see,
e.g.*, *United States v. Wilson*, 853 F. App'x 297, 305–07
(10th Cir.) (mem.), *cert. denied*, 142 S. Ct. 366 (2021) (court
of appeals was "unable to conclude that the jury would have
reached the same conclusion if properly instructed" under
*Rehaif* when a § 922(g) defendant's convictions were all

juvenile except for an adult conviction at age 18, for which he served four years in the youthful offender system rather than adult prison) (cleaned up), the majority rests its affirmance solely on Michell's two DUI convictions in early 2017—stemming from conduct more than 13 years earlier— for which he served only four months in prison.[3] As to these convictions, Michell asserts that he did not know, at the time of the charged conduct in November/December 2017, that they were punishable by more than one year of imprisonment.

My colleagues find no "reasonable probability" that a jury could find that Michell did not realize that his DUI convictions were so punishable. Majority at 9. They cite his 2016 Maricopa County plea agreement, *id*. at 10, his statements to investigators, *id.* at 14, and his trial testimony, *id*. I address each of these in turn.

A

1

On October 21, 2016, Michell signed an agreement to plead guilty in the Maricopa County Superior Court to driving under the influence in 2003. This agreement is not included in the record of any part of this case; the government proffers it on appeal through a motion requesting that we take judicial notice under Federal Rule of Evidence 201(d). Michell objects, arguing that on plain error review we are limited to the entire record, even if we are not limited to the trial record. *See Irons*, 31 F.4th at 714 (on plain-error review, "we 'may consider the *entire record*—

---

[3] Because the majority declines to consider whether Michell's juvenile conviction qualifies as a felon-in-possession predicate, I likewise decline to do so.

not just the record from the *particular proceeding* where the error occurred' ") (quoting *Greer*, 141 S. Ct. at 2098) (emphasis in *Greer*).

I agree with the majority that we are not so limited. The Court in *Greer* reasoned that on plain error review an appellate court can look beyond the trial record to "the entire record" because such review assumes a counterfactual scenario where the district court gave the proper *mens rea* instruction and the parties "introduce[d] additional evidence" relevant to that instruction. *Greer*, 141 S. Ct. at 2098. The Court also suggested that the parties could seek to supplement the record on appeal with evidence bearing on the defendant's state of mind. *See id*. at 2097 (citing Fed. R. App. P. 10(c)). It necessarily follows that we can consider additional "relevant and reliable" evidence from *outside* the entire record of the proceeding itself, at least to the extent such evidence could have been presented to the jury in the counterfactual hypothetical that plain error review envisions.

Michell further argues that even if we are not otherwise restricted on plain error review to the entire record, our decision in *United States v. Dior*, 671 F.2d 351 (9th Cir. 1982), precludes us from taking judicial notice of his 2016 Maricopa County plea agreement. In *Dior*, a case involving *de novo* review, we explained that for "an appellate court to take judicial notice of an adjudicative fact in a criminal case would frustrate the policies Congress sought to achieve in providing in F.R.Evid. 201([f]) that a jury is not required to accept as conclusive a judicially noticed fact." *Id*. at 358 n.11.

I agree with the majority that *Dior* and Rule 201(f)[4] do not bar us from taking judicial notice of an adjudicative fact such as Michell's 2016 Maricopa County plea agreement.[5] That rule's purpose is to "preserve the jury's traditional prerogative, in a criminal case, to ignore even uncontroverted facts in reaching a verdict and to prevent the trial court from violating the spirit of the Sixth Amendment right to counsel by directing a partial verdict as to facts." *Dior,* 671 F.2d at 358 n.11 (citing *United States v. Jones*, 580 F.2d 219, 223–24 (6th Cir. 1978); H.R. No. 93-650, 93d Cong., 1st Sess. 6–7, reprinted in 1974 U.S.C.C.A.N. 7051, 7075, 7080).

On plain error review, however, we ask whether the error affects "substantial rights," *Greer*, 141 S. Ct. at 2096, which requires "the showing of 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Dominguez Benitez*, 542 U.S. at 81–82 (cleaned up and quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)). This formulation reflects the standard adopted in *Strickland v. Washington*, 466 U.S. 668 (1984), where the Court explained that in determining "whether the specified errors resulted in the required prejudice," *id*. at 694,

---

[4] Federal Rule of Evidence 201(f) provides that "[i]n a criminal case, the court *must* instruct the jury that it *may or may not* accept the [judicially] noticed fact as conclusive." Fed. R. Evid. 201(f) (emphasis added).

[5] An "adjudicative fact . . . is a fact 'concerning the immediate parties.' " *Banks v. Schweiker*, 654 F.2d 637, 640 n.3 (9th Cir. 1981) (quoting Fed. R. Evid. 201 advisory cmte. notes). Michell's initials and signature on the 2016 Maricopa County plea agreement concern him and thus are adjudicative facts.

a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if the lawless decision cannot be reviewed.

*Id*. at 694–95.

It follows from this reasoning that we must presume—because Michell does not challenge the evidentiary sufficiency of the decision below—that if the district court had taken judicial notice of his 2016 Maricopa County plea agreement and given a Rule 201(f) instruction, the jury would not have exercised its prerogative to simply ignore the existence of that agreement, whose authenticity is unchallenged. Rule 201(f) therefore is no impediment to our taking judicial notice of Michell's plea agreement, and I concur in granting the government's motion that we take such notice.

2

The majority holds that Michell's 2016 Maricopa County plea agreement "prove[s] beyond a reasonable doubt that [Michell] knew in 2017 that he had been convicted of a crime punishable by more than a year in prison." Majority at 10. Although I acknowledge that a jury *might* reach that conclusion after a new trial, it's by no means a foregone conclusion.

In my view, Michell's 2016 Maricopa County plea agreement is underwhelming evidence of his state of mind at the time of the charged conduct over a year later.[6] That Michell signed the document and initialed its 11 paragraphs of fine print hardly establishes that he read the document at the time.

And even if we infer that Michell read the plea agreement, I don't see how we can be certain that he understood it. As Michell argues in response to the government's motion to take judicial notice, the plea agreement "raises more questions than it answers." The passage cited by the majority provides:

> Count 1: The crime carries a presumptive sentence of **2.5** years; a minimum sentence of **1.5** years; a mitigated sentence of **1** year; a maximum sentence of **3** years; and an aggravated sentence of **3.75** years. Probation **IS** available.

On the face of the document, it's not clear which of these sentence ranges Michell was eligible for. For all he knew as a layman, his maximum exposure was limited to "a mitigated sentence of one year," which might not be a qualifying felon-in-possession predicate.

Michell also points out the passage cited by the majority is neither boldfaced nor underscored in its entirety, in

---

[6] Michell signed the Maricopa County plea agreement in October 2016. The superseding indictment charged Michell with possessing a rifle and ammunition in November/December 2017.

contrast to the key provisions of the agreement outlining the actual terms affecting him, such as the provision stating that

> **<u>Defendant shall serve 4 months in the Arizona Department of Corrections then be placed on Supervised Probation. Defendant shall pay a fine of $750 plus an 80% surcharge….Defendant's driver's license shall be revoked.</u>**

(Boldface and underscoring in original.) If Michell read any part of the plea agreement, he was more likely to have read the boldfaced and underscored provisions outlining the bottom-line consequences for him.

And even if Michell read and understood the contents of his 2016 Maricopa County plea agreement, it does not necessarily mean that he remembered the agreement's sentencing range minutia at the time of his charged conduct. *Cf. United States v. Werle*, 35 F.4th 1195, 1205 (9th Cir. 2022) (that "he knew of [the possible imprisonment term almost two] years earlier [at his sentencing hearing] does not necessarily mean that he remembered it at the time he possessed the firearm"). The only points of the agreement that he was certain to have remembered were the ones that directly affected him—his four-month sentence, his probation, his fine, and the loss of his driver's license. Even then, over a year later he may not have remembered the *amount* of his fine, just as he may not have remembered his sentencing exposure range (unlike his fine, a fact of no significance to him).

As *Greer* requires, *see* 141 S. Ct. at 2098, Michell points to evidence that he can present at a new trial to show that he did not realize at the time of the charged conduct that his

DUI convictions were punishable by imprisonment for more than one year. Most importantly, he points to his concurrent four-month prison sentences. "[I]n each of our published opinions denying relief for *Rehaif* errors we have cited the fact that a defendant *actually served more than one year in prison* as a reason for concluding that the defendant knew that he had been convicted of a crime punishable by more than one year in prison." *Werle*, 35 F.4th at 1204–05 (emphasis added). Drawing from that caselaw, we explained that "the length of time one serves in prison bears on whether one is likely to remember that one's convictions were punishable by more than one year in prison." *Id.* at 1205; *see also Rehaif*, 139 S. Ct. at 2198 (suggesting that 18 U.S.C. §§ 922(g)(1) and 924(a)(2) do not apply to "a person who was convicted of a prior crime *but sentenced only to probation*, who does not know that the crime is '*punishable* by imprisonment for a term exceeding one year' ") (first emphasis added, second emphasis in original) (quoting 18 U.S.C. § 922(g)(1)).

Not only does this case fit squarely under *Werle*, but it's an even stronger case for a new trial. In *Werle*, the defendant was *sentenced* to one year and one day for each of his predicate convictions,[7] but he *served* less than a year on each. 35 F.4th at 1203. Even so, we found that he could make "a colorable argument at trial" that he did not know at the time of the charged conduct—less than two years after his

---

[7] Aside from the two predicate convictions for his felon-in-possession charge, the defendant in *Werle* had been convicted of at least 18 other crimes. *See* 35 F.4th at 1203. In contrast, Michell had no prior convictions other than his juvenile conviction and his DUI convictions, all of which stemmed from offenses that antedated the charged conduct by more than a decade.

most recent sentencing hearing—that his conviction was punishable by more than a year in prison. *Id.* We did so even though he "*was more likely to know that he had been convicted of a felony than another similarly situated defendant who was sentenced to less than one year in prison.*" *Id*. at 1205 (emphasis added).

Because Michell was only sentenced to *and* only served four months for his DUI convictions, he was less likely to know he had been convicted of a felon-in-possession predicate than the defendant in *Werle*. Even more than that defendant, Michell could make a "colorable argument" at trial that he did not know that his DUI convictions were punishable by more than a year's imprisonment. We should follow *Werle* here and not treat Michell's plea agreement as conclusive evidence of his state of mind over a year later as the majority does.

B

The majority also cites Michell's statement, in his post-arrest interview with the FBI, that "he did not have guns himself because he was a 'felon.' " Majority at 14. Respectfully, the critical question here is not whether Michell knew he was a "felon," a vague term nowhere found in §§ 922(g)(1) and 924(a)(2).[8] The critical question is instead whether he knew, at the time of the charged conduct,

---

[8] Michell correctly notes that as "a matter of convenience" courts often use "felon" to describe defendants who satisfy § 922(g)(1)'s lengthy definition, but that neither a defendant's nor the courts' use of that shorthand "adequately describe[s] the element that the Government[] has the burden of proving under § 922(g)(1)" under *Rehaif. See also Werle*, 35 F.4th at 1205 ("Although a violation of § 924(a)(2) and § 922(g)(1) is colloquially referred to as being a 'felon in possession of a firearm,' the word 'felon' does not appear in the relevant statutory provisions.").

that his 2017 DUI convictions were punishable by imprisonment for more than one year. His statement to his FBI interrogators is at most probative of that question rather than conclusive. *Cf. Werle*, 35 F.4th at 1206 ("[A] defendant's acknowledgement that he has been convicted of a felony," while "undoubtedly probative evidence that a factfinder may consider in determining whether the defendant had the requisite mens rea[,] . . . standing alone is not necessarily *conclusive* . . . .") (emphasis in original).

Nor does Michell's statement to investigators implying it wasn't "legal" for him to have guns speak to whether he knew that his DUI convictions were punishable by more than one year of imprisonment. To begin with, the majority ignores that Michell acknowledged that the terms of his probation for his 2017 DUI convictions precluded his possession of firearms. His statement was not necessarily a reference to his status under *federal* law.

But more importantly, the government need not prove that "the defendant knew his or her status prohibited firearm ownership or possession." *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020). That necessarily cuts in both directions. If a defendant's knowledge as to whether he could possess weapons is not relevant to his defense, then surely that same knowledge can't be used to *convict* him, as we acknowledged in *Werle*. *See* 35 F.4th at 1202–03 ("That he knew . . . that he was not supposed to possess a firearm do[es] *not* suffice" for purposes of the government's burden of proof.) (emphasis added).[9] The relevant inquiry here is

---

[9] "There are many reasons one might be prohibited from possessing a firearm . . . . Thus, the fact that a defendant knows that he may not possess a firearm is not conclusive evidence that he knows that he has

whether Michell "knew that the maximum potential sentence to which he was exposed for his [DUI convictions] exceeded one year." *Id*. at 1203. That Michell understood he was a prohibited possessor does not matter.

C

Finally, the majority cites Michell's trial testimony. Majority at 14. The first cited passage reads as follows:

> Defense Counsel: So you *know* that there were aggravated DUI charges, you know to be a felony?
>
> Michell: Yes, sir.

(Emphasis added.)

Once again, the majority strays off course. Of course Michell knew *at the time of trial* that his DUI convictions were "felonies" (whatever that means, *see above* note 8) for purposes of federal law. After all, that's what the man was on trial for. But the relevant question is Michell's state of mind "*when* he possessed the firearm," *Werle*, 35 F.4th at 1205 (emphasis added) (quoting *Greer*, 141 S. Ct. at 2095). Because this question was asked and answered in the present tense, Michell's response lacks probative value.

The second passage cited by the majority reads as follows:

> Defense Counsel: *Are* you a prohibited possessor?

---

been convicted of a crime punishable by more than one year in prison." *Id*. at 1203 n.4.

Michell: Yes, sir. After my DUI matter, that's why there was no guns, no—I mean, I'm not going to lose my opportunity to be . . . with my daughters.

(Emphasis added.)

Unlike the colloquy discussed above, Michell's answer speaks to his state of mind at the time of the charged conduct as well as at trial. But as explained above, it is of no moment if Michell knew at the time of the charged conduct "that he was not supposed to possess a firearm" for purposes of federal law,[10] because that "does not suffice" to establish the government's *Rehaif* burden. *Werle*, 35 F.4th at 1202–03. "What matters is whether [he] knew that the maximum potential sentence to which he was exposed for his previous crimes exceeded one year." *Id*.

D

As the majority points out, Michell must demonstrate that there exists "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Majority at 8 (quoting *Greer*, 141 S. Ct. at 2096). The Supreme Court has explained that "[a] 'reasonable probability' of a different result is . . . shown when the [error] 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

---

[10] Even if it were relevant, the trial testimony cited by the majority does not necessarily establish that Michell knew at the time of the charged conduct that he was a prohibited possessor for purposes of *federal* law. As discussed above, Michell acknowledged at trial that the *probation terms* of his 2017 DUI convictions precluded his possession of firearms.

To undermine such confidence, we know that the defendant need not show that he "more likely than not" would "have received a different verdict" without the error. *Id*.; *cf. Strickler v. Greene*, 527 U.S. 263, 298 (1999) (Souter, J., concurring) ("[T]he continued use of the term 'probability' raises an unjustifiable risk of misleading courts into treating it as akin to the more demanding standard, 'more likely than not.' ").[11] "Reasonable probability" therefore means some chance that is less than 51 percent at the high end of the range.

On the other hand, we also know that plain error review should not be "too easy" for defendants. *See Dominguez Benitez*, 542 U.S. at 82 (noting that the policy of Federal Rule of Criminal Procedure 52(b) is "to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get [plain error] relief"). To that end, the Supreme Court's cases teach that "reasonable probability" is *more* demanding for defendants than a mere "reasonable possibility." *See Greene*, 527 U.S. at 291 (explaining that a defendant must "establish a reasonable *probability* of a different result," not just "a reasonable possibility") (emphasis in original); *see also United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("[T]he mere possibility that an item of undisclosed information might have aided the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); *Greene*, 527 U.S. at 300 (Souter, J., concurring) (explaining that " 'reasonable possibility' . . . and 'reasonable probability' express distinct levels of confidence concerning

---

[11] The reasonable probability test "is not a sufficiency of evidence test," as "[t]he possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict." *Kyles*, 514 U.S. at 434–35.

the hypothetical effects of errors on decisionmakers' reasoning").[12]

As the Supreme Court in another context has defined a "reasonable possibility" as meaning as low as a 10 percent chance, *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987) (explaining that "a 10% chance of being . . . persecuted" is a "reasonable possibility" of such persecution occurring), a "reasonable probability" is something less than 51 percent ("more likely than not") but more than 10 percent ("reasonable possibility"). In view of Justice Souter's suggestion that the difference between "reasonable probability" and "reasonable possibility" is "slight" and that the former is closer to the latter than it is to "more likely than not," *see Greene*, 527 U.S. at 300 (Souter, J., concurring), but also keeping in mind the Supreme Court's admonition that plain error relief should not be "too easy," *Dominguez Benitez*, 542 U.S. at 82, I think we can define "reasonable probability" as roughly a 25 percent likelihood.[13]

On this record, as augmented through judicial notice, there is modest evidence that Michell "knowingly" violated § 922(g)(1) as *Rehaif* requires: The government's case rests

---

[12] *But see Irons*, 31 F.4th at 713, 715 (using "reasonable possibility" as synonymous with "reasonable probability").

[13] I acknowledge that Justice Scalia condemned seeking to define "ineffable gradations of probability" other than "beyond a reasonable doubt" and "more likely than not" as "beyond the ability of the judicial mind (or any mind) to grasp, and thus harmful rather than helpful to the consistency and rationality of judicial decisionmaking." *Dominguez Benitez*, 542 U.S. at 86–87 (Scalia, J., concurring in the judgment). But unless and until the Supreme Court adopts the "more likely than not" standard advocated by Justice Scalia, *see id.*, lower court judges on plain error review must grapple with divining the meaning of "reasonable probability."

on statements Michell made that do not speak directly to his state of mind at the time of the charged conduct and on an ambiguous sentencing-range provision that Michell had no reason to focus on—much less commit to memory—when he signed the 2016 Maricopa County plea agreement more than a year before his charged conduct. The weakness of the government's case, when coupled with the evidence negating his *mens rea* that Michell says he will introduce in any new trial—specifically, that the Arizona courts adjudicating his DUI offenses sentenced him to only four months and that he only served the same—leads me to conclude that the likely outcome of any new trial is a coinflip. Michell therefore has more than carried his burden of demonstrating at least a 25 percent likelihood "that a properly instructed jury would have had a reasonable doubt" as to whether he knew at the time of the charged conduct that his DUI convictions exposed him to imprisonment for more than one year. *Irons*, 31 F.4th at 715. Because that likelihood is "sufficient to undermine confidence in the outcome" of the proceeding, *id*. at 714 (quoting *Dominguez Benitez*, 542 U.S. at 83), in my judgment the district court's *Rehaif* errors affected his substantial rights.

## III

As Michell has satisfied his burden to show that plain error affected his substantial rights, in my view we should exercise our discretion to correct this error because it seriously affects "the fairness, integrity[, and] public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2097 (quoting *Rosales-Mireles*, 138 S. Ct. at 1905). Michell "was deprived of his basic right to have the jury decide every element of the offense charged. The error also led him to forego possibly winning defenses and trial tactics. And the evidence that the jury would have convicted him anyway is

too thin for us to say that close is close enough." *United States v. Gear*, 9 F.4th 1040, 1051 (9th Cir. 2021) (Bumatay, J., concurring in part and dissenting in part); *see also Irons*, 31 F.4th at 715 ("Removing the key disputed issue at trial from the jury's consideration certainly casts doubt on the fairness of the proceedings, even if Irons' own counsel failed to catch the error."). And because the government's case against Michell on the element of his knowledge is marginal, reversal is no threat to "the integrity or fairness of the proceedings." *Irons*, 35 F.4th at 715 (quoting *United States v. Turchin*, 21 F.4th 1192, 1203 (9th Cir. 2022)).

\*      \*      \*

The constitutional right to a "public trial, by an impartial jury" on all elements of a charged offense is a lone citizen's last line of defense against the vast power of the United States Government. U.S. Const. amend. VI; *see also* 3 J. Story, *Commentaries on the Constitution of the United States* § 1774, at 653 (1833) ("[T]rial by jury" protects "against a spirit of oppression . . . on the part of rulers, . . . the prejudices of judges, who may partake of the wishes and opinions of the government, and . . . the passions of the multitude . . . ."). Because the evidence (even as augmented through judicial notice) against Michell is modest rather than overwhelming, I would send this case back for a new indictment and new trial. In such a trial, Michell could for the first time fully defend himself before a properly instructed jury. I respectfully dissent from the majority's affirmance of his conviction.